JOHN E. SOPER ET AL. *vs.* WILLIAM M. TYLER.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The meaning of technical terms used in expressing a trade contract is to be determined by the usage common in that trade.

The defendant, a retailer in Waterbury, on June 22d, ordered, by telegram, two car-loads of oats of the plaintiffs, wholesale grain dealers in Boston, which the latter agreed "to ship promptly, line *via* H. R." The plaintiffs had already purchased ten car-loads of oats in Chicago to be consigned to them at Bridgeport, Conn., with the right to divert them at West Albany, as they might thereafter order, and two of these cars, which left Chicago within ten days of the receipt of the defendant's order, were diverted at West Albany and sent to the defendant at Waterbury, where they arrived July 25th, when the defendant refused to receive them. The trial court found that by the usage of the Boston grain trade "prompt shipment" meant a shipment within ten days; that "line *via* H. R." referred to shipments from points west of the Harlem River to places in New England, with the right in the dealer to divert the cars at Albany, Poughkeepsie, or New York City, to any point which he might designate; that from four to six weeks was a reasonable time for transporting a car-load of oats from Chicago to Waterbury; and rendered judgment for the plaintiffs. *Held : —*

1. That the contract did not limit the plaintiffs to a shipment from any particular point in the West.

2. That Chicago might well be deemed a proper place of shipment under the usage of the Boston grain trade.

3. That the rights of the plaintiffs could not be affected by the mistake of the defendant in supposing that the oats would be shipped from New York City.

4. That West Albany was only a point of transfer, not of shipment.

Judicial notice may be taken of the fact that the great grain fields of the country lie west of the Hudson River.

Argued April 13th—decided August 12th, 1904.

ACTION to recover damages for the refusal of the defendant to accept two car-loads of oats ordered by him, brought to the City Court of Waterbury and thence by the defendant's appeal to the District Court of Waterbury and tried to the court, *Peasley, Deputy-Judge ;* facts found and judg-

ment rendered for the plaintiffs, and appeal by the defendant. *No error.*

*John O'Neill,* for the appellant (defendant).

*Edward L. Seery,* for the appellees (plaintiffs).

BALDWIN, J. This cause was before us at a former term. A new trial was subsequently had in the District Court, on issues closed to the court, and the plaintiffs again recovered judgment.

The trial court properly held that the correspondence between the parties, set out in the report of our former decision (73 Conn. 660), constituted a valid and actionable contract. The finding shows that the plaintiffs were wholesale dealers in grain, at Boston, buying their grain mainly in the West; that it was the custom of such dealers to consign grain so bought in car-loads to New England points, with directions to hold it at West Albany or some other railroad point on the Hudson River, for further orders; that among grain dealers the words used in their letter of June 22d "to be shipped prompt" meant shipment within ten days, and the words "Line *via* H. R." meant that, if "all rail," it would be made by way of the Harlem River in New York, the shipper having the option of diverting the cars at Albany, Poughkeepsie, or New York City; that on June 13th, ten car-loads of oats had been bought by the plaintiffs of Churchill & Company in Chicago, to be consigned to them at Bridgeport, Conn., with instructions to hold them at West Albany until further orders; that on June 26th, Churchill & Company shipped two cars of oats so consigned; that the numbers and invoices of these cars were sent by the plaintiffs to the defendant on June 30th; that the cars reached West Albany on July 17th, when the plaintiffs ordered them to be forwarded to their order at Waterbury, Conn.; that the original bills of lading were then indorsed by the railroad company, "Consignment changed, without recourse, to the order of J. E. Soper & Co., Waterbury, Connecticut,

July 17, 1899. Notify William M. Tyler; " that on July 25th the cars arrived there, but the defendant, though duly notified, refused to accept them ; and that from four to six weeks is a reasonable time for transporting a car-load of oats from Chicago to Waterbury.

When the defendant made. his contract with a Boston grain dealer, the meaning of any technical terms used in expressing it, so far as they were terms of common use in the grain trade at Boston, was to be determined by such usage. *Hatch* v. *Douglas*, 48 Conn. 116. By the usage of the trade, " to be shipped prompt " meant to be shipped within ten days. But from where ? It is a proper matter of judicial notice that the grain fields of the country lie west of the Hudson River. The Harlem River runs through New York City, from the Hudson to Long Island Sound. The only stipulation as to the route by which the oats were to come was that it was to be on a line *via* the Harlem River. This phrase had a settled meaning in the Boston grain trade. It refers to shipments from points west of the Hudson River to New England points, with the right in the dealer of diverting the cars at Albany, Poughkeepsie, or New York City, to any point which he may designate.

The contract did not limit the plaintiffs to a shipment from any particular point in the West. At its date, they had become the purchasers of ten car-loads of oats at Chicago. Two of these they caused to be forwarded by rail from Chicago, in the customary way, sending on the invoices with the car numbers to the defendant within eight days after the contract of sale to him. The cars arrived at Waterbury within six weeks from the date of the contract. The trial court in rendering judgment for the plaintiffs, must have held that Chicago was a proper place of shipment. There is nothing in any of the facts specially found which is inconsistent with that conclusion. As a great shipping point for grain, it might well be deemed such a place under the usage of the Boston grain trade. The defendant, indeed, had on previous occasions purchased oats by the car-load from the plaintiffs, which had been for-

warded to him from New York City, and supposed when he made the contract that the words " Line *via* H. R." meant that the cars would be shipped from Harlem River, that is, from New York City.    But this misunderstanding of a term of trade, however unfortunate for him, cannot vary the rights of the other party.

It is contended that, even under the usage found by the trial court, the place of shipment of the grain in question was West Albany, since there its destination was changed from Bridgeport to Waterbury.    But the bills of lading bore upon their face directions to the railroad company to hold the cars at West Albany for further orders. Instead of sending them on to Bridgeport, the company might be required and was required to forward them to Waterbury.    The whole transit from Chicago to Waterbury was under a single and indivisible contract of transportation.    The *terminus a quo* was fixed at the outset: the *terminus ad quem* was left to be fixed by orders to be given when a certain point had been reached ; but that such orders might be given and must be obeyed was an integral and important part of the original bargain between the shipper and the carrier.    West Albany was a point of transfer, not of shipment.    A single bill of lading was issued for each car for the whole transit from Chicago to Waterbury, and the indorsement of the change of consignment on July 17th had simply the effect of designating one out of a number of points to which the shipper had from the beginning the right to direct a delivery.

There is no error.

In this opinion the other judges concurred.