[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION STATEMENT OF THE CASE
The plaintiff, Yale University, seeks to quiet title to two properties it owns in New Haven. The properties are located at and known as 405 Temple Street and 40-46 Whitney Avenue and form an irregularly shaped parcel with frontage on Temple Street of about 25 feet and about 144 feet on Whitney Avenue. They are located in a busy commercial area of downtown New Haven. A building occupies the entire Temple Street frontage and over half of the Whitney Avenue frontage. The remaining footage on Whitney Avenue has been a parking lot for many years and this lot has also provided the only access to the rear of the buildings on both streets. A small unpaved and unimproved area between the buildings is the focal point of this dispute.
The defendants claim title by adverse possession to a portion of the area between the buildings and a prescriptive right of way over the parking lot to reach that portion of the parcel they claim adversely.
At the request of the parties, the court made a visit to the site accompanied by Thomas Byrne, Esq., its clerk.
 APPLICABLE LAW
Adverse possession is not judicially favored and must be proved by clear and convincing evidence.
 "In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for 15 years by open, visible and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner. Citations omitted."
To acquire a right of way by prescription, the use must be open, visible, continuous and uninterrupted for 15 years and made under a claim of right. Only a fair preponderance of the evidence is required to establish such a use.
 DISCUSSION I. CT Page 14398
The defendants' occupancy to commence the 15 years required for adverse possession commenced on January 17, 1983 when the defendant Audubon Copy Shoppe, Inc. acquired the parcel adjoining 44-46 Whitney Avenue on the east.
At that time, he stated "He parked a vehicle there during the hours of Audubon's operation — initially from 8:00 a.m. until 9:00 p. m. and a portion of Saturdays and Sundays, with weekend hours phased out about ten years ago — and as needed on pleasure trips into New Haven. " (Defendants' Brief, page 6).
He also claims to have "stored various debris" there over the years. This appears to be more an act of "dumping" rather than "storing." He claims to have applied gravel "as needed" and to have addressed a drainage problem and to have had cars parked in "his" spaces towed, while blocking in others. He also testified about erecting a sign to discourage parking in the disputed area.
The defendant Panza testified at trial that, in January of 1982, while he was leasing rear space at 48 Whitney Avenue from the then owner, he commenced using the portion of the area in question for loading and unloading and then for parking. The defendant corporation was not in possession of 48 Whitney Avenue at this time.
The plaintiff's notice to interrupt any possession by the defendants, pursuant to § 52-575 of the General Statutes, was not given until November 23, 1999. This notice was tardy for the purpose intended for either date, January 1982 or January 1983.
The plaintiff's arguments in opposition, addressed below, speak to "interruptions" of any alleged possession and dominion before 15 years had elapsed from both dates as well as other weaknesses in the claimants' proof.
 II.
Witnesses offered by the plaintiff described a different picture of the use of the parking area in dispute than did Mr. Panza. Dr. Marlene Schwartz, co-director of the Yale Clinic occupying the plaintiff's 405 Temple Street building, stated that prior to her becoming co-director in September of 1996, parking in the area was "haphazard" and some semblance of order was required. She amplified her description of"haphazard" in that Yale personnel parked in the spaces Panza is claiming and he occupied spaces Yale personnel felt were theirs. Cars were blocked in by other cars. She also testified that she has parked in the "Panza spaces," CT Page 14399 even before September of 1996.
It was with a solution to this condition in mind that she directed her administrator to speak to Mr. Panza.
Ms. Elizabeth Litto, a senior administrator, has been employed at 405 Temple Street for 12 years. She testified that prior to September of 1996, "people would drive in and park anywhere." She and others would occupy the "Panza spots." Upon receiving Dr. Schwartz's directive, she met with Mr. Panza and an agreement was reached whereby Yale personnel parked in four spaces adjacent to the rear of 405 Temple Street. Panza was to have four spaces, including the two close to his building which he now claims by adverse possession.
Ms. Litto also said she thought this area was a lot for Yale and Panza and the two spaces were his, but that after entering into the agreement, she felt she had given Panza permission to use the spaces allocated to him.
The testimony of these two witnesses is significant. Ms. Litto has been on the scene since 1989 and Dr. Schwartz from before 1996. Their description of the parking activity contradicts testimony of Mr. Panza as to the use of the area by Yale, Panza, and others. The use by Panza, at least up to September 1996, was a shared use and as such is not the exclusive use required for an adverse possession to occur. Whitney v.Turmel, 180 Conn. 147 (1980).
The existence of this oral agreement is not disputed and, coming as it did at a time when Dr. Schwartz decided some action was necessary to create order, it reflects an assertion by the plaintiff of its ownership of the property and its consent for Panza to use a portion of it.
While the defendant argues that neither Dr. Schwartz nor Ms. Litto had the authority to bind Yale, the fact is that they acted together to assert Yale's authority and Mr. Panza did not protest, nor express the view that he didn't need them nor their permission. It is basic real property law that there can be no adverse possession if the possession is exercised with the consent of the owner. Lowenberg v. Wallace,151 Conn. 355, 357 (1964).
The court finds, therefore, that the defendants' use of the contested portion of the parking area was not exclusive and was shared by employees of the plaintiff. And further, that as of September 1996, the defendants' use of the parcel they claim was with the consent of the plaintiff.
 III. CT Page 14400
One asserting title by adverse possession must prove use of the disputed area was uninterrupted for the 15 year statutory period.
The plaintiff has presented independent evidence of entry into and upon the area in dispute as well as obstruction of the claimed right of way leading to that area. If found to be credible, this interruption would successfully negate the plaintiff's alleged use and possession whether it commenced in 1982 or 1983.
The deposition of James Kurko was introduced by agreement of the parties. Mr. Kurko is an architect who was employed by Yale in 1991. He was well acquainted with the Yale property designated "Parcel 3" on Exhibit D and bounded by the 405 Temple Street piece and the 40-46 Whitney Avenue pieces.
He related that the open area was a problem site, used for dumping trash, and for parking by Yale people as an overflow for the parking lot at 40 Whitney Avenue. It was also used by others, including some to whom he gave permission.
Between 1995 and 1997, Yale had the Paragon Construction Company doing substantial renovative work on these and other Yale properties. Mr. Kurko permitted Paragon to use Parcel 3 as its staging area and Paragon stored material and equipment and parked its trucks on that site. This use continued until 1997.
A building permit for work on 44-46 Whitney Avenue (Exhibit H) dated November 21, 1995 indicates the work done there, including replacing the roof on the building.
Mr. Kurko's testimony as to this phase of the work is relevant to the issue of interruption, for he stated that he intended to block access to Parcel 3. He therefore told Paragon to place dumpsters in the area next to the building at 44 Whitney Avenue. These dumpsters received the debris from the roofing project and effectively closed off Parcel 3.
Mr. Kurko also described his confrontation with Mr. Panza who complained about the blockage and the parking of Paragon vehicles. It was his testimony that access was eliminated for periods of half a day to two weeks. In addition, the vacant lot at 40 Whitney Avenue used for parking was closed, along with access to Parcel 3, while that lot was paved.
While Mr. Panza was unhappy and complained, Yale apparently proceeded with its work as planned and used the entire Parcel 3 as its own. On Exhibit D, Mr. Kurko sketched in and identified the portions of Parcel 3 CT Page 14401 as used by Paragon. The area Mr. Panza claims as his, 18 by 30 feet outside his building, is shown as used by Paragon at various times.
This testimony is totally contradictory to that of Mr. Panza who stated he could not recall a time when his access to Parcel 3 was blocked. Mr. Panza first testified that he asked that the dumpsters not block his access before the construction started. (It is unclear how he knew in advance what Yale intended).
On rebuttal to the plaintiff's case, however, Mr. Panza said he called the contractor to, complain after his access was blocked.
Of course, Mr. Panza had acquired no rights by adverse possession in 1995 as his earliest claim of use and dominion dated from 1982 — 13 years earlier. The fact that he "asked" that the dumpsters not be so placed as to block access suggests he was aware that this area was subject to Yale's control and dominion and that Yale was exercising its prerogatives.
This premise is supported by what transpired in the fall of 1996 when Ms. Litto and Mr. Panza agreed on an allocation of four parking spaces each. This is the first reference to Panza's occupying more than two spaces and would indicate an admission on his part that this total area was Yale's and that it was giving him permission to use a portion of it.
It is also significant that when the right of way and parking area were interfered with by Yale, Panza took no action to put them on notice of his alleged adverse interest. He apparently complained but then waited until the work was completed and Paragon left before resuming his prior customary use.
The court concludes that the plaintiff's actions in 1995, continuing into 1997, served to effectively interrupt any use by the defendants of the claimed right of way and any possession over the disputed portion of Parcel 3.
 IV.
In adverse possession claims, the nature and extent of the claimant's exercise of dominion on and in connection with the disputed area is relevant.
Here, the defendants claim to have parked two vehicles in an unmarked area, estimated by them to measure 18 by 30 feet. The vehicles were allegedly parked, from 8:00 a.m. to 7:00 p. m. or 9:00 p. m. on weekdays (but not every night!) Saturdays from 12:00 noon to 5:00 p. m. and CT Page 14402 Sundays. The use of the spaces was apparently shared by members of the Panza family when they came into New Haven. Weekend hours were phased out about ten years ago, so that in 1991, use was confined to week days and the occasional family use. "Recently" material was "stored." This "storage" is in a different place than the parking and appears to be a dumping ground rather than storage.
Other activities allegedly engaged in include placing a sign directing other users not to block the area, snow plowing after Yale had plowed the front parking lot and blocked the right of way, putting stone on the surface, and asking a contractor on the adjoining site to clear a drain in the wall bordering Parcel 3. He also claims to have had vehicles found in "his" spaces towed and left warning notes on the vehicles of other offending parkers. The details of the "towing" were vague.
Comparing the defendants' use of the disputed parcel with what our courts have previously found wanting, the court must conclude that the defendants have failed to demonstrate "continuous use" for the requisite period of time.
The plaintiff has cited Sands Associates v. Rios, 6 Conn. App. 84
(1986) where the claimant cleared the area in dispute, maintained a garden, raised pigs and chickens, erected a garage, built a fence, tethered a dog on the site, and had cookouts there.
The trial court's finding was that only the erection of the garage which overlapped onto the disputed property constituted "continuous activity" which might substantiate an adverse possession claim. This, however, was found insufficient because it was not maintained for 15 years.
Compared to the activity of these defendants and their modest exercise of dominion, coupled with the sharing of the right of way and parking area with others as noted above, the court concludes that the defendants' actions failed to establish the continuous possession required by Connecticut cases. It should be noted that many of the acts of "dominion" exercised by the defendants occurred after the agreement with Yale's employees in 1996 — at which time Panza actually had some basis to use the property as his.
 V.
The plaintiff also argues that the defendants' possession was not hostile in its inception and did not continue as such for the required 15 year period. Lazoff v. Padgett, 2 Conn. App. 246, 250 (1984). CT Page 14403
While the agreement entered into by Ms. Litto and Mr. Panza belies any "hostile" possession, there has also been an ongoing cooperative relationship between Yale's employees at 405 Temple Street and the Panzas. This includes the Yale office bringing work to the Audubon Copy Shoppe. This relationship is also reflected in the fact that Panza would call the Yale Psychology office if a car were parked in one of his spaces to be sure it wasn't one of the Yale employee's cars before he took any action as to that car.
The evidence is strongly indicative that there was never a hostile possession displayed by these claimants.
 VI.
Finally, the plaintiff argues that the defendants' use of the disputed area was not open and notorious for the required 15 year period.
 "The requirement that an adverse possession be "notorious" in the sense of "being or constituting something that is commonly known: well known" (Webster, Third New International Dictionary) is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice."
Robinson v. Myers, 156 Conn. 510, 518 (1968); citations omitted.
Though it may have lacked actual notice, the plaintiff was charged with constructive notice as of 1989 when its employees became aware of the parking activity on and around Parcel 3.
This finding is of no value to the claimant's cause, however, for events discussed above which occurred in 1995 and 1996 effectively terminated the running of the required 15 year period.
The defendants offered no evidence to enable the court to find that before 1989, Yale had either actual or constructive notice of his activity in this small out of the way island surrounded by buildings.
Absent such proof, Yale's notice to interrupt possession in 1999 was effective to terminate the claimed use after 10 years.
 VII. THE RIGHT OF WAY
CT Page 14404
A prescriptive right cannot be acquired unless the use defines its bounds with reasonable certainty. Kaiko v. Dolinger, 184 Conn. 509, 511
(1981).
The defendants have not described the course of the right of way they claim to have acquired by prescription. While a narrow portion at the corner of the building at 44 Whitney Avenue is obviously the only access to the vacant area in question, this point is some 75 to 80 feet away from the street.
The question this poses is what portion of the plaintiff's parking lot is to bear the burden of the claimed right of way? As it stands after the trial testimony, no such route has been delineated. Similarly, no evidence was offered to support the existence of an easement from the narrowest point on the parcel to the site claimed by adverse possession.
Therefore, the defendants' reliance on Faught v. Edgewood Corners,Inc. is misplaced. In that case, the court found a right of way by prescription, for there were two curb cuts allowing access to the parcel in question. From the evidence, the court was able to find the right of way from the first curb cut straight back to a parking area behind the plaintiff's property. Id., 63 Conn. App. 164, 166 (2001).
That is not what the court has in this case where we are dealing with a regularly used parking lot in use for many years. It would appear to be about 70 feet wide on examining the plot plans in evidence.
Referring to the Kaiko case, supra, the court does not find that the right of way claimed has been defined with reasonable certainty.
The court's findings in Sections II and III as to the parking area claims are also applicable to the claims regarding the right of way. In 1996, the use, if it were adverse, became consensual. And, with the building activity of 1995-1997, the access was interrupted by Yale's blocking it and asserting its dominion.
 CONCLUSION
The special defenses as to the defendants' claim of title by adverse possession and a right of way by prescription are rejected.
Title to the real property at issue, shown as Parcel 3 on Exhibit D and 40 Whitney Avenue, is found to be in the plaintiff Yale University, free and clear of any right, title or interest of the defendants Lawrence R. Panza and Audubon Copy Shoppe, Inc. CT Page 14405
Counsel for the plaintiff may submit for the court's signature such documentation as he deems necessary for filing on the land records.
Anthony V. DeMayo, J.T.R.