PASQUALE MERINO ET ALS. *vs.* GEORGE F. FISH, INC.

Third Judicial District, Bridgeport, October Term, 1930.

MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 29th, 1930—decided January 27th, 1931.

*John Elliott,* with whom was *F. Raymond Rochford,* for the appellant (defendant).

*Harold F. Rosen,* with whom, on the brief, was *David M. Reilly,* for the appellees (plaintiffs).

MALTBIE, J.   As this case comes to us the only question presented is whether the trial court was in error in adjudging that two of the plaintiffs, Pasquale Merino and Carmelo Merino his wife, had a right to the use of a certain proposed street appearing upon a map of land in Hamden and running across a tract now owned by the defendant.   In April, 1905, the land was owned by John H. Davis and he then caused a survey of it to be made and a map prepared upon which it was subdivided into lots for development and sale.   The land constituted a tract about two hundred and thirty-five

feet wide running from State Street to Ridge Road. Upon the map a strip thirty-five feet wide through the center was marked off and the remainder was divided into lots. Ten of these fronted on State Street and ten on Ridge Road, and the rest lay on each side of the strip through the center of the tract and fronted upon it. The map was filed in the town clerk's office June 6th, 1908. Davis caused the lots fronting upon State Street and those fronting upon the strip to a distance of fourteen hundred and sixty feet from the street upon the north and about thirteen hundred and eighty-five feet upon the south to be staked out and he sold them to various purchasers. The deeds of all lots fronting upon the strip each contained a grant of a right of way over it, designating it as a "proposed street," but the deeds of the lots fronting upon State Street contained no such grant, except one which conveyed both lots on that street and also lots fronting upon the proposed street. Davis retained all the tract westerly of the lots staked out by the surveyor and used it in connection with his homestead which stood upon it. From the point where the surveyor ceased to stake out lots upon the south of the proposed street a driveway had run for a long time to Ridge Road, not following the direct route of the proposed street, but curving somewhat to the south.

In 1918 the Merinos bought of Davis a tract consisting of two contiguous lots fronting upon State Street and lying next to the proposed street. This purchase was made from a map of the tract shown them at the time by Davis' agents and attorneys, which was a duplicate of the map on file except that the strip through the center was marked "Hubbard Street." The deed described the land as a certain parcel in Hamden, "known as lots numbers 172 and 173 on 'Map of Hubbard Place, Hamden, Conn., owned by

John H. Davis' on file in the Hamden town clerk's office," and bounded it "southerly by Hubbard Place, as laid out on said map, one hundred feet more or less." Later they acquired by mesne conveyances five lots lying directly back of these and fronting upon the proposed street, with the right of way over it annexed to the grants of land fronting upon it. As occasion required and at not infrequent intervals the Merinos have used the proposed street and driveway to get from their property to Ridge Road; the nearest public way between State Street and Ridge Road to the north is about thirty-one hundred feet away, and to the south, twenty-three hundred feet away; and the proposed street and driveway furnished them a convenient means of access to Ridge Road.

The judgment of the trial court that the Merinos had the right to use this way was based upon a cross-complaint filed by the defendant in which it sought a declaratory judgment, among other things, as to whether or not the plaintiffs had any right to use any portion of its land; and the judgment is not open to the objection that it is not supported by the pleadings. In *Whitton* v. *Clark,* 112 Conn. 28, 32, 151 Atl. 305, we recently said: "The law is well settled that where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." It is true that we there restricted the right of a purchaser to have the streets and highways kept open so that it would not include any street delineated upon the map which was not, and would never in all likelihood prove, of any benefit to the lot he bought. In the instant case the trial court's

finding amply shows that the right of the Merinos to use the proposed street to get to Ridge Road was of benefit to them in the ownership of the lots they bought of Davis, and this restriction does not apply. The right acquired by a conveyance based upon such a map as the one before us is a private right, and may exist entirely apart from the creation of a highway over the proposed street delineated upon it. "The existence of a right of way in the vendee by reason of a sale to him by reference to a plat is entirely independent of whether any right exists in the public. For instance, although the public authorities refuse to accept the dedication, or vacate a street appearing on a plat, so that the dedication of the street is practically a nullity, nevertheless the vendee's rights remain the same as if the authorities had not taken such action." Tiffany on Real Property (2d Ed.) p. 1321; *White* v. *Tide Water Oil Co.,* 50 N. J. Eq. 1, 4, 25 Atl. 199; *Cook* v. *Totten,* 49 W. Va. 177, 179, 38 S. E. 491; *Danielson* v. *Sykes,* 157 Cal. 686, 689, 109 Pac. 87. So much of the defendant's brief as is addressed to the failure of Davis effectually to dedicate the proposed street is not pertinent to the issues which this appeal presents; nor is there occasion to follow that brief in its discussion of the statutes permitting the filing of maps in the town clerk's office, as the right of the Merinos arose from the conveyance to them upon the basis of the map exhibited to them and in no way could be affected by its filing in the town clerk's office.

It is true that in April, 1905, there was in effect a statute which provided that "no person, company, or corporation, excepting municipal corporations, shall lay out any street or highway in this State less than three rods in width, unless with the prior written approval of a majority of the selectmen of the town, or of the burgesses of the borough, or of the common

council of the city, wherein such street or highway is located"; and which went on to forbid the opening of any street or highway to the public until the grade, width and improvements had received the written approval of the municipal authorities mentioned and such approval had been filed in the office of the clerk of such town, city or borough. General Statutes, 1902, § 2050 (now, in an amended form, General Statutes, 1930, § 1436). "The statute has to do with the layout and improvement of roads or streets by individuals or private corporations, and the approval of the selectmen is an approval of the layout and opening of private ways and not of public highways; it looks to the possibility of their becoming public highways, but does not constitute an acceptance of them as such." *Stratford* v. *Fidelity & Casualty Co.*, 106 Conn. 34, 39, 137 Atl. 13. The statute as it stood in April, 1905, did not contain any provision for a penalty nor, as it now does, any method for its enforcement. In *Makepeace* v. *Waterbury*, 74 Conn. 360, 365, 50 Atl. 876, we had before us a provision of the charter of the city of Waterbury, which forbade any person to open a public way within its limits except by virtue of an order of the common council and of this provision we said: "The closing sentence of § 27 is in terms a prohibition against individuals opening a public way within the limits of the city, except under an order from the court of common council. To prohibit an act does not necessarily prevent it from being done. Even if this amendment to the charter made it unlawful thereafter for any unauthorized person to dedicate ground within the city for a public way, it still remained possible to make such dedication, though it might violate the law. This very thing is contemplated and provided for in the later amendment of 1895, which prescribes a penalty for every day a way so illegally opened shall re-

main open." That principle is applicable here, and the fact that Davis in surveying the proposed street, marking it upon the map and making conveyances of land upon the basis of the map may have violated the statute cannot destroy the right to its use which the Merinos acquired by their conveyance.

While the circumstances of a particular case might perhaps negative an intention of the parties to create a right annexed to a lot conveyed upon the basis of a map to use the streets marked upon it, nothing appears in this case which would have that effect; there is nothing to show that the Merinos knew of the provision in the prior deeds of lots fronting upon the proposed street which the trial court held to restrict the rights of the owners of those lots to the portion of the street within fourteen hundred and sixty feet of State Street; and mortgages made by Davis of the land retained by him after the conveyance to the Merinos, without mention of any rights they might have to pass over it certainly could not affect the transaction out of which their rights arose.

There is no error.

In this opinion the other judges concurred.