ALICE LAZOFF *v.* JOSEPH W. PADGETT ET AL.
(2406)

DANNEHY, C.P.J., DUPONT and BORDEN, Js.

Argued March 1—decision released July 3, 1984

*Robert A. Fuller,* for the appellant-appellee (plaintiff).

*Philip H. Bartels,* with whom, on the brief, was *David P. Burke,* for the appellees-appellants (defendants).

BORDEN, J. This is an adverse possession case in which the plaintiff appeals[1] from the judgment of the trial court in favor of the defendants.[2] The disputed property is a trapezoidal parcel containing less than one tenth of an acre which the plaintiff alleged in her complaint she maintained as a side yard to her residence and to which she claimed title by adverse possession. The defendants are the record owners of the parcel and are the plaintiff's adjoining neighbors. The trial court found that beginning in 1957 the plaintiff's predecessor in title, McFadden, improved the disputed property, planting on it a lawn with some lilac bushes. It further found that the plaintiff and her predecessors in title

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The defendants filed a cross appeal in which they attempt to present certain other factual grounds, none of which was addressed by the trial court. We regard the cross appeal as a statement of alternate grounds upon which the judgment may be affirmed, under Practice Book § 3012 (a). Our disposition of the appeal makes it unnecessary to reach those grounds.

continued to use the property in a similar manner until 1979, when this controversy arose. That court also found, however, that in 1963 McFadden acknowledged to the defendant's predecessor in title, Keeler, that the property belonged to Keeler. The court further found that at that time Keeler consented to McFadden's use of the property, and that McFadden continued this acknowledged and consensual use of the property until 1966. On the basis of these findings, the court concluded that the plaintiff's claim for adverse possession failed because she had not proven that her possession was without the consent of the owner.

The plaintiff's appeal raises a constellation of claims which orbit about these critical findings and conclusions of the trial court. We find no error.

"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the owner." *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982); *Meshberg* v. *Bridgeport City Trust Co.,* 1 Conn. App. 10, 13, 467 A.2d 685 (1983). Adverse possession must be proven by clear and positive proof, and is to be taken strictly. *Roche* v. *Fairfield,* supra, 498–99.

The plaintiff first claims error in two related evidentiary rulings concerning which Keeler was permitted to testify, over the plaintiff's objection, as to his intent in giving permission to McFadden to use the property. The plaintiff's argument that these rulings permitted impermissible opinion and conclusion testimony is without merit. Whether Keeler gave consent or not was a factual issue involving his intent. It has long been our law that " '[w]hen the intention of a witness is a fact

relevant to the issue he may testify directly as to his intent.' " *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 378, 44 A.2d 702 (1945).

The plaintiff also claims error in the court's conclusion that consent was given by the "owner" of the property, because Keeler was not the record title holder at the time of the pivotal conversation in 1963. We disagree.

The court found that Keeler was not the record title holder but was a silent 50 percent owner of the property together with the record title owner. McFadden recognized him as an owner of the property. Thus, it was clear that Keeler was an equitable owner of the property.

One of the elements of adverse possession is that the claimant's possession be "without license or consent of the owner." *Roche* v. *Fairfield,* supra, 498. " 'The word "owner" has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used.' " *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 241, 50 A.2d 59 (1946). It is "not restricted to one who has the legal or rightful title, whether the possessor or not." *Hope* v. *Cavallo,* 163 Conn. 576, 582, 316 A.2d 407 (1972). "Courts, when applying equitable principles, ' "can always look behind the technical legal title if necessary to work out . . . the rights of the parties." ' " *Middlebury* v. *Steinmann,* 189 Conn. 710, 716, 458 A.2d 393 (1983). And "one who has actual notice of equitable rights not of record is nevertheless bound to recognize them." *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 240, 193 A. 769 (1937). We conclude that Keeler's equitable interest coupled with McFadden's recognition of it sufficed to make Keeler an "owner" for purposes of adverse possession.

This leaves for consideration the plaintiff's claim that the court erred in holding in effect that the consent by Keeler, given subsequent to the presumably nonconsensual entry by McFadden, was sufficient to vitiate the plaintiff's claim of possession without the owner's consent. There is some authority, on which the plaintiff relies, to the effect that if the claimant's initial entry is nonconsensual a subsequent grant of consent by the owner, without more, is insufficient to vitiate the element of lack of consent. See, e.g., *Naporra* v. *Weckwerth,* 178 Minn. 203, 226 N.W. 569 (1929); *Macias* v. *Guymon Ind. Foundation,* 595 P.2d 430, 433 (Okla. 1979).

We need not decide, however, whether this authority applies here. The court found in effect that in 1963 McFadden acknowledged Keeler's ownership of the property, and that McFadden's use from 1963 until January, 1966, was pursuant to this acknowledgment. This finding brings the case squarely within the principle that "[t]he possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other. . . . Occupation must not only be hostile in its inception, but it must continue hostile, and at all times during the required period of fifteen years challenge the right of the true owner, in order to found title by adverse use upon it." (Citations omitted.) *Paton* v. *Robinson,* 81 Conn. 547, 551, 71 A. 730 (1909). Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew. 3 American Law of Property § 15.9, pp. 810–11; 7 Powell, Real Property § 1014. Thus, while the route we take is somewhat different from that of the trial court, we agree with its ultimate judgment that the plaintiff failed to prove her case. See *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 326, 417 A.2d 343 (1979).

We have considered the other claims of the plaintiff. They either flow from those claims which we have already rejected, or involve factual determinations which are not clearly erroneous.

There is no error.

In this opinion the other judges concurred.