# RICHARD D. RUDDER ET AL. *v.* MAMANASCO LAKE PARK ASSOCIATION, INC., ET AL.
## (AC 25710)

Lavery, C. J., and McLachlan and Peters, Js.*

---

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

760

Argued October 18, 2005—officially released February 21, 2006

*Robert A. Fuller*, for the appellants (plaintiffs).

*Patrick J. Walsh*, with whom, on the brief, was *Dawn L. Rudenko*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiffs, Richard D. Rudder and Cynthia Rudder, appeal from the judgment of the trial

court in favor of the defendants[1] in this action claiming adverse possession and seeking to quiet title. The plaintiffs claim on appeal that the court improperly (1) declined to construe easement language in the deeds of some of the individual defendants, which were submitted into evidence at trial, (2) failed to find that the individual defendants did not have easement rights over the disputed area, (3) applied an improper standard of proof to the plaintiffs' adverse possession claim, (4) found that the plaintiffs failed to prove adverse possession against either the defendant Mamanasco Lake Park Association, Inc. (association), or the individual defendants and (5) found that the plaintiffs' failure to enclose fully the disputed area defeated their claim of adverse possession. We disagree with each of those claims and affirm the judgment of the trial court.

The following facts, which either were found by the court or were not disputed, and procedural history are relevant to the issues on appeal. The parties are owners of properties within a twenty-two lot[2] subdivision in the town of Ridgefield and the neighborhood association comprised of those owners. The subdivision lots are

---

[1] The defendants are Mamanasco Lake Park Association, Inc., a Connecticut nonstock corporation that owns and manages common areas within a subdivision in Ridgefield known as Mamanasco Lake Park, and certain of its individual members who, like the plaintiffs, reside within that subdivision. The individual defendants who are parties to this appeal are Bruno A. Defabio, Sandra R. Defabio, James R. Hinkle, Germane L. Hinkle, Erwin F. Schoenbrunn, Dorothy R. Schoenbrunn, Ken L. Dolan, Margaret E. Connaghan, George J. Sposito, Rosemary H. Sposito, Neil S. Coppola, Henry P. Lewis, Betty I. Lewis, Thomas H. Johnsrud, Nina H. Johnsrud, Mary Jo E. Stofko, David Tewksbury, Susan Tewksbury, William Maher, Linda Maher, Matthew S. Stuart, Nora E. Stuart, Joseph G. Arcieri, Nancy D. Arcieri, Thomas P. Campbell, Cathleen S. Savery, James V. Deluca, Joseph W. Moorhead, Katherine M. Norgauer, Charles A. Destival, Sondra M. Destival, Jocelyn G. Fainer, Franklin E. Marlin and Joan Marlin. Alex V. Harris, Meredith R. Harris, Carl Bailey, Thomas McInerney and Mary McInerney did not file appearances and were defaulted.

[2] Some of these lots, including the plaintiffs' property, consist of multiple smaller lots held in common ownership and have only one residence.

accessible from a town road by two parallel roadways running east and west, Lisa Lane and Christopher Road, and a strip known, on the basis of its width, as the twenty-eight foot passway (passway), which may be accessed from the western end of Christopher Road via a short connector. The passway, which is roughly perpendicular to Christopher Road, runs generally north and south and is bordered by several of the subdivision lots, one of which is a community recreation area. The lots along the western side of the passway, which include the recreation area and the plaintiffs' property, are bordered to the west by Mamanasco Lake. The eastern border of the plaintiffs' property is the northern end of the passway. It is the northernmost 140 feet of the passway (disputed area) that is the subject of the plaintiffs' action.

The entire western side of the disputed area borders on the plaintiffs' property, although the plaintiffs' property extends farther south than the southern end of the disputed area. The northern end and part of the eastern side of the disputed area border on property outside of the subdivision that is owned by a religious organization. The remainder of the eastern side of the disputed area borders on the lot owned by individual defendants Ken L. Dolan and Margaret E. Connaghan. The southern end of the disputed area borders on the remainder of the passway. Most of the passway is paved, although for only twenty feet of its twenty-eight foot width. The pavement ends, however, just south of the disputed area.

The disputed area, during the relevant period of time, may be described as follows. At its southern end, just north of the end of the paved portion of the passway, is a bed of pachysandra fronted by some railroad ties. Just north of the pachysandra is a split rail fence. The fence and the pachysandra bed each are about twenty feet wide and, thus, do not span the entire width of the

passway. About one foot of the width of the passway lies to the west of the fence and pachysandra bed, and about seven feet of the width of the passway lie to their east. There is a drain in the passway, near the end of the paved portion and the eastern side of the split rail fence. Just north of the split rail fence are two shrubs and on either end are large planter pots. The majority of the remainder of the disputed area to the north is wooded,[3] although a portion of it, comprising roughly its southwest quadrant, is encroached on by the edge of the plaintiffs' lawn, some plantings and a drainage ditch.

The plaintiffs purchased their property in 1984. During their subsequent time there, they maintained the pachysandra bed, split rail fence and lawn, all of which predated their arrival, and added the plantings and shrubbery. Around 1990, they installed a deer fence along the northern end of the disputed area and part of its eastern border. In 1999, they replaced the deer fence with a taller one that extended farther along the eastern border. Also around that time, they replaced the split rail fence with a much more substantial wooden fence that was eight feet high. The new fence extended across the entire passway and farther westward onto the plaintiffs' property[4] and, consequently, completely blocked access to the disputed area. The association thereafter commissioned a survey that revealed the disputed area to be association property. When subsequently requested by the association to remove the fence, the plaintiffs, who had always believed that the disputed area was part of their property, admitted that they had been mistaken and offered to purchase it. The association was advised by an attorney that it could not sell the property, and this litigation followed.

[3] The court described it as "a bucolic or pastoral setting."

[4] Apparently, the fence also extended eastward to a point where it encroached on the property owned by Dolan and Connaghan.

In January, 2002, the plaintiffs filed a two count complaint against the association and its individual members. See footnote 1. In the first count, they claimed to have acquired from the association, via adverse possession, title to the disputed area.[5] In the second count, which incorporated allegations from the first count, they averred that each of the individual defendants "may claim easement rights over the claimed area under deeds in their chain[s] of title," and that "[t]he defendants claim estates or interests in the land or parts thereof which are adverse to the title to the claimed area acquired by adverse possession by the plaintiffs."[6] The plaintiffs requested, inter alia, a judgment establishing that they had acquired title to the disputed area by adverse possession and determining the rights of the parties in and to the area and settling the title thereto.

The defendants filed an answer and a two count counterclaim in which they asserted that the association was the record title owner of the disputed area and that the individual defendants had easements to use it. In their answer to the defendants' counterclaim, the plaintiffs, in response to the paragraph in the second

---

[5] The claimed prescriptive period was from 1984, when the plaintiffs purchased their property, to 1999, when the larger fence was installed. The statutory period to acquire land by adverse possession in Connecticut is fifteen years. See General Statutes § 52-575.

[6] Deeds for six of the properties owned by individual defendants were introduced at trial. Using language that varies somewhat, those deeds convey rights-of-way to the respective property owners over the subdivision roads. For example, the deeds to Erwin F. Schoenbrunn, Dorothy R. Schoenbrunn, Ken L. Dolan, Margaret E. Connaghan, Henry P. Lewis and Betty I. Lewis convey "a right of way for all lawful purposes in common with others, over the roads as shown on [a map of the subdivision filed in the land records] to and from the public highway." The easement clause in the deed to George J. Sposito and Rosemary H. Sposito is more specific, referring explicitly to "a right of way for all lawful purposes in common with others over the 28' passway . . . ." (Internal quotation marks omitted.) The plaintiffs' deed, also introduced at trial, similarly grants to them "a right of way, in common with others, to pass and repass over and across the private roads as shown on [the subdivision map]."

count asserting that the individual defendants had easements to use the disputed area, replied: "It is admitted that the [d]efendants have easement rights over the claimed area[7] in their deeds or chains of title, but otherwise [that paragraph] is denied because the [p]laintiffs claim ownership of the claimed area by adverse possession."

A trial to the court was held on October 29 through 31, 2003. In a March 1, 2004 memorandum of decision, the court denied the plaintiffs' adverse possession claim. Specifically, it concluded that the disputed area "was not of the character, in terms of its usage and nature, which would compel a court to hold that the plaintiffs adversely possessed it by clear and convincing evidence." It stated additionally that the plaintiffs' " 'possession' cannot be deemed 'adverse' enough, 'exclusive' enough, 'uninterrupted' enough, 'hostile' enough, or 'notorious' enough to oust any of the neighbors from their mutually shared deeded entitlement." The court considered the evidence presented insufficient "to establish the character of the plaintiffs' conduct to be opposed to the rights of the others and the association, and . . . inadequate as well to have apprised them of resistance to those rights." It also found that the plaintiffs' use of the disputed area was permissive.

On March 10, 2004, the plaintiffs filed a motion to reargue and for reconsideration and alteration of the judgment. Therein, they claimed that their complaint, in addition to claiming adverse possession, had challenged the existence of the individual defendants' easement rights as to the disputed area and, further, that "[t]he defendants also filed a counterclaim alleging easement rights over the disputed area which the plaintiffs have

---

[7] In their complaint, the plaintiffs defined the disputed area and stated that it would be referenced thereinafter as " 'the claimed area.' "

denied." Thus, the plaintiffs argued, the pleadings raised a material issue that the court did not address. According to the plaintiffs, their "legal position was and is that even if adverse possession was not proven against the record title owner, the [a]ssociation, that the individual defendants have no right to use the disputed area." The plaintiffs referred to portions of their post-trial brief in which they had argued that the individual defendants had no easement rights over the disputed area, either express or implied. Additionally, they requested that the court reconsider its findings as to whether they had established the elements of adverse possession and as to the significance of the split rail fence. In their objection to the plaintiffs' motion, the defendants argued that the plaintiffs' claims regarding the existence of the easement rights were not pleaded or litigated and were beyond the scope of the case.

On May 12, 2004, the plaintiffs filed another postjudgment motion, captioned "request to amend complaint for the pleadings to conform to the evidence." Although the language of the proposed amendment is not altogether clear,[8] the motion indicated that the plaintiffs sought to make it more apparent, retroactively, that they had been contesting whether the individual defendants' easement rights extended over the disputed area on the basis of the language in the deeds creating those rights. The defendants objected, noting that the motion was untimely and that "[t]he proposed amendment does little but to confuse the issue already tried and adjudicated in the [d]efendants' favor."

---

[8] The plaintiffs sought to amend paragraph thirty-four of their complaint to allege: "The individual defendants claim easement rights over the disputed area, which abuts the plaintiffs' property, which are adverse to the plaintiffs' claim of their exclusive right to use the disputed area based on the recorded deeds referring to that part of the passway and because the plaintiffs have acquired title to the disputed area by adverse possession." Originally, that paragraph alleged the following: "The defendants claim estates or interests in the land or parts thereof which are adverse to the title to the claimed area acquired by adverse possession by the plaintiffs."

The court addressed the plaintiffs' motions in a supplemental memorandum of decision filed July 29, 2004. It first denied the motion to amend, agreeing that it was untimely and rejecting the claim that the proposed amendment was an accurate reflection of the way the case had been tried. The court further declined to modify the judgment, opining that it was "totally unnecessary to rule upon the 'counterclaim' of the [individual defendants] . . . ." In essence, the court concluded that because the plaintiffs had failed to prove their claim of adverse possession against the association, they were in no position to exclude the individual defendants from land to which the association held title. It noted further that only six of the individual defendants' deeds had been submitted into evidence. Accordingly, the court suggested, even if the easement rights in those deeds did not contemplate use of the disputed area, it still would not result in an "exclusionary victory" for the plaintiffs.[9] The court concluded by ordering that the expanded fencing erected by the plaintiffs in 1999 be dismantled so as to provide the individual defendants the access to the disputed area that they previously had enjoyed.[10] This appeal followed. Additional facts will be provided where necessary.

I

The plaintiffs claim first that the court improperly declined to construe the meaning of the easement lan-

[9] The court also appears to have found that regardless of whether the individual defendants possessed deeded easement rights in the disputed area, they were entitled to use it by virtue of their association membership.

We note here that given our resolution of the first issue raised by the plaintiffs, the appeal was brought from a final judgment even though the court did not decide the defendants' first counterclaim. Moreover, even were we to decide that issue differently, the court's explicit refusal on the record to address the counterclaim would render the judgment final pursuant to *Ahneman* v. *Ahneman*, 243 Conn. 471, 480 n.14, 706 A.2d 960 (1998). See also *Russell* v. *Russell*, 91 Conn. App. 619, 628 n.8, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 91 (2005).

[10] In response to still further motions filed by the parties, the court clarified that the fence need not be completely dismantled, but rather returned to the lesser "status which existed prior to the complete 'barricade.' "

guage in the deeds of the individual defendants that were introduced into evidence. They argue that the defendants, in the first count of their counterclaim, raised the issue of whether they had deeded easement rights and, therefore, had the burden of establishing that those rights extended to the disputed area.[11] According to the plaintiffs, applying the rules governing deed construction, the individual defendants' easement rights contemplate only the use of the subdivision roads as necessary to access their own properties and the community recreation area.[12] The defendants argue that the court correctly declined to construe the deed language because the plaintiffs had admitted that the individual defendants had easement rights over the disputed area. We agree with the defendants.[13]

"Construction of the effect of pleadings is a question of law and, as such, our review is plenary." *Ross* v. *Forzani*, 88 Conn. App. 365, 368, 869 A.2d 682 (2005). Pleadings are intended to "limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise." (Internal quotation marks omitted.) *Harris* v. *Shea*, 79 Conn. App. 840, 842–43, 832 A.2d 97 (2003); see also 71 C.J.S. 38, Pleading § 3 (2000) ("purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial").

[11] The plaintiffs also appear to argue, alternatively, that their own complaint raised this issue.

[12] Because "the interpretation of a deed is a matter of law subject to plenary review"; *Palmieri* v. *Cirino*, 90 Conn. App. 841, 846 n.7, 880 A.2d 172 (2005); the plaintiffs request that this court construe the deed language even though the trial court did not.

[13] Although the defendants in making this argument focus on language in the plaintiffs' complaint, we consider the plaintiffs' answer to the defendants' counterclaim to demonstrate more directly the admission at issue. Moreover, although the court's refusal to construe the deed language at issue was not based on the pleadings, it is "axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005).

Accordingly, "[t]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Internal quotation marks omitted.) *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 866, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005); see also 71 C.J.S. 246, supra, § 196 ("admission in a plea or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission"). "It is axiomatic that the parties are bound by their pleadings." (Internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 88 Conn. App. 445, 455, 871 A.2d 373 (2005).

As previously explained, the defendants in the second count of their counterclaim asserted that they had easement rights over the disputed area. The plaintiffs in their answer conceded that the defendants' assertion was true, stating quite clearly that "[i]t is admitted that the [d]efendants have easement rights over the claimed area in their deeds or chains of title . . . ." That admission was effective to remove from the case the issue of what, precisely, was encompassed by the easement language in the individual owners' deeds. The remainder of the plaintiffs' response to the defendants' allegation of easement rights—"but otherwise [the allegation] is denied because the [p]laintiffs claim ownership of the claimed area by adverse possession"—is indicative of the theory of the case on which the plaintiffs proceeded, namely, rather than contesting that the individual defendants in fact possessed deeded easement rights over the disputed area, the plaintiffs attempted to establish that those easement rights had been extinguished.

Our review of the entire record reinforces our conclusion. It convinces us further that the plaintiffs in their complaint were claiming extinguishment of the easements and that their arguments regarding construction of the deed provisions were raised only belatedly in their posttrial brief and contrary to their concession in their answer to the counterclaim. Specifically, there was no indication throughout the trial that the plaintiffs were taking issue with the scope of the easement language in the deeds. The deeds in evidence were not introduced by the plaintiffs, but rather by the defendants. Moreover, in response to questions from his own counsel, Richard Rudder confirmed that in bringing the action, he was "claiming title by adverse possession to the disputed area" and also "the extinguishment of . . . whatever easement rights owners in the subdivision might have to the claimed area." Finally, in a subsequent colloquy with the court, the plaintiffs' counsel stated that "the fact is, this is a claim of adverse possession where we're extinguishing the rights of the owner, we're claiming we're extinguishing the easements." He reiterated that the plaintiffs were "claiming title by adverse possession. Adverse possession means you're the only people that have [the property]. . . . [W]hat you're doing is, you're cutting off the rights of everybody else. Whether the right you're cutting off is . . . an easement right or an ownership right." At no point did the plaintiffs or their counsel indicate that any other theory was being pursued. In fact, their unsuccessful postjudgment attempt to amend their complaint strongly suggests otherwise.

On the basis of the foregoing analysis, we conclude that the plaintiffs, in arguing posttrial for construction of the individual defendants' deeds, were attempting improperly to litigate an issue outside the scope of the case as defined by the pleadings. Accordingly, the

court's refusal to interpret the deed language was proper.

## II

The plaintiffs' next claim is that even if the individual defendants have deeded easement rights, it does not necessarily follow that they have an absolute right to have the entire passway kept open for use in connection with their properties. According to the plaintiffs, the court improperly declined to examine whether the use of the disputed area would be of such benefit to the individual defendants that the area should be kept open. This claim lacks merit.

The plaintiffs raise, as they did in their posttrial brief, an alternative argument in support of their position that the individual defendants lack easement rights over the disputed area. They cite a number of cases that have established a general proposition with an accompanying limitation. The general proposition is that "where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." *Whitton* v. *Clark*, 112 Conn. 28, 32, 151 A. 305 (1930). "The sole limitation upon that right is that the street or highway must be of benefit to the lot owner." *Gerald Park Improvement Assn., Inc.* v. *Bini*, 138 Conn. 232, 236, 83 A.2d 195 (1951); see also *Lake Garda Co.* v. *D'Arche*, 135 Conn. 449, 453–54, 66 A.2d 120 (1949); *Merino* v. *George F. Fish, Inc.*, 112 Conn. 557, 560, 153 A. 301 (1931); *Whitton* v. *Clark*, supra, 33; *Gemmell* v. *Lee*, 59 Conn. App. 572, 575–76, 757 A.2d 1171, cert. denied, 254 Conn. 951, 762 A.2d 901 (2000). Simply put, the plaintiffs claim, under authority of those cases, that the individual defendants'

rights to use the roads of the subdivision do not extend to the disputed area because their use of that area is not necessary for them to access either their own lots or the community recreation area and, therefore, the area is of no benefit to them.

After a review of the cited cases, we conclude that they are wholly inapposite to the facts of this matter and that the court properly disregarded the plaintiffs' argument as inapplicable. Specifically, the cases involve a type of easement created indirectly and by implication when the easement holder's deed does not grant expressly a right to use neighborhood roads, but rather merely makes a reference to a map on which those roads are depicted. See generally 4 R. Powell, Real Property (2005) § 34.06. Here, the individual defendants' deeds included express easement provisions giving them the right to use the roads of the subdivision, and the plaintiffs, in answering the counterclaim, admitted that those easements extended to the disputed area.[14] Accordingly, the plaintiffs' argument, concerning easements that are implied from maps referenced in deeds, clearly does not pertain to the facts of this matter, and the court correctly concluded that it was inapplicable. Cf. *Schroeder* v. *Taylor*, 104 Conn. 596, 134 A. 63 (1926) (where deeded easement rights exist, it is immaterial whether easement also arises from necessity).

### III

The plaintiffs argue next that the court applied an improper standard of proof in evaluating their adverse

---

[14] We note additionally that in the cases cited by the plaintiffs, the parties seeking to limit the easement rights at issue were the fee owners of the lands over which the easements were claimed. In the present case, once the court determined that the plaintiffs had failed to establish that they gained title to the disputed area via adverse possession, it was proper for the court to conclude that the plaintiffs, as nonowners of the burdened land, were not in a position to argue for a reduction in the scope of the individual defendants' easement rights.

possession claim. They claim, in essence, that the court used an elevated standard, given the character of the parties, specifically, because of the association's status as a nonstock corporation, the members of which resided within the subdivision. We disagree.[15]

Our resolution of that issue requires us to interpret the language used in the court's decision. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 708, 867 A.2d 111, rev'd on other grounds, 275 Conn. 671, 882 A.2d 53 (2005). "The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment,

---

[15] The plaintiffs also argue that the court improperly found that the individual defendants had ownership interests in association property and that this finding led to the court's utilization of a higher standard of proof. We agree that the court's statement in the opening paragraph of its decision that "[t]he [disputed area's] titular ownership is shared between all members of a 'park association' " was erroneous insofar as the evidence was undisputed that the fee to the area was possessed by the association alone and not by its individual members. There is no indication, however, that this finding led the court to apply an improperly high standard of proof. In any event, this court has held that for purposes of analyzing an adverse possession claim, the word "owner" has no fixed meaning, but rather is context specific. *Lazoff* v. *Padgett*, 2 Conn. App. 246, 249, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984).

In *Lazoff*, we explained that the concept of ownership was "not restricted to one who has the legal or rightful title" and concluded that consent to use the property at issue was sufficient to defeat the plaintiff's adverse possession claim, even though that consent was given by someone who did not hold record title to the property, but instead was a silent, 50 percent equitable owner. Id. As more fully explained in part IV, to the extent that the court failed to distinguish between the association's fee ownership and the individual defendants' easement rights, that lack of distinction did not impact its conclusion, which was focused on the insufficiently adverse nature of the plaintiffs' actions vis-a-vis the disputed area, and not on the defendants' attempts to reclaim it.

we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citation omitted; internal quotation marks omitted.) *Ottiano* v. *Shetucket Plumbing Supply Co.*, 61 Conn. App. 648, 652, 767 A.2d 128 (2001).

The plaintiffs' argument rests on certain statements by the court in its initial memorandum of decision. Specifically, the court prefaced its conclusion that the plaintiffs' conduct on the disputed area was insufficient to establish adverse possession by opining that "[n]o claim of adverse possession should lightly be granted where to do so risks establishing a trend toward a shrinkage of shared ownership throughout the compound." Prior to that statement, the court had summarized the plaintiffs' usage of the disputed area and stated that "[i]f these facts were deemed to be enough to require judicial passage of title in commonly held land in association held property, it would set up an uneasy wariness throughout like communities. The resident next most obscurely located who abuts a common passway might begin a pattern of conduct which would then witness all the other joint holders sensing a discomforting obligatory need to use, not casually, as whim might dictate, but in fixed integers, recording their actions in self-conscious self-protection." According to the plaintiffs, those observations are indicative of the court's use of an improper, elevated standard of proof. We are not convinced.

We note first that elsewhere in the decision, the court refers expressly to the applicable standard of proof for the plaintiffs' adverse possession claim, that is, "by clear and convincing evidence." See *Allen* v. *Johnson*, 79 Conn. App. 740, 745, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003). The plaintiffs argue nevertheless that despite that express articulation of the correct standard, the aforementioned comments by

the court evidence its utilization of some other, higher standard.

It cannot be disputed that adverse possession claims are highly fact and context specific. In evaluating such claims, "[t]he location and condition of the land [at issue] must be taken into consideration and the alleged acts of ownership must be understood as directed to those circumstances and conditions." (Internal quotation marks omitted.) *Roche* v. *Fairfield*, 186 Conn. 490, 501 n.11, 442 A.2d 911 (1982); see also 16 R. Powell, Real Property (1999) § 91.01 [2] ("character of disputed property is crucial in determining what degree of control and what character of possession are required to establish adverse possession"). Additionally, in assessing whether hostility exists, "the relation that the [alleged] adverse possessor occupies with reference to the owner is important." *Woodhouse* v. *McKee*, 90 Conn. App. 662, 673, 879 A.2d 486 (2005). In sum, when "determining whether the necessary elements of adverse possession exist, each claim must be decided on its own particular facts. The requirements vary according to, and it is necessary to consider, the nature and situation of the property. To determine whether particular acts constitute adverse possession, it is sometimes necessary to consider the character of the property and the purposes for which it is suitable, the circumstances attending the possession, the acts and declarations of [the] claimant while in possession, and the relation of the holder of the legal title to the claimant." 2 C.J.S. 459, Adverse Possession § 33 (2003).

A decision of the Supreme Judicial Court of Maine presents a fact pattern with strong parallels to that of the present case. In *Falvo* v. *Pejepscot Industrial Park, Inc.*, 691 A.2d 1240 (Me. 1997), the plaintiffs owned property within a village that was operated by the defendant mill company for many years as a " 'company

town.' "[16] Id., 1242. The plaintiffs claimed that they had acquired through adverse possession some of the defendant's property that bordered on three sides of the plaintiffs' property.[17] Id. Like the plaintiffs, however, "[m]ost of the village residents used portions of mill property surrounding their lots for gardens, septic tanks, garages, sewer lines, outbuildings, wood storage, and recreation space." Id. Under the circumstances, the trial court found that the plaintiffs had "failed to prove that their possession and use were hostile and under a claim of right." Id.

Similar to the argument by the plaintiffs here, the plaintiffs in *Falvo* argued on appeal that "the court applied an erroneous legal standard by requiring them to give 'unusual notice' of their [adverse possession] claim to [the] defendant, and by creating a 'company town exception' to the notice requirement." Id., 1243. The Supreme Judicial Court rejected that claim, concluding that the trial court properly had considered the nature of the land and all the surrounding circumstances in determining whether the plaintiffs' acts sufficiently apprised the defendant of a hostile claim of right. Id. It noted the trial court's findings "that the mill owners allowed and encouraged workers to use company property adjacent to their homes, and never

[16] There were twenty homes within the village, occupied by workers of the defendant. *Falvo* v. *Pejepscot Industrial Park, Inc.*, supra, 691 A.2d 1242. The plaintiffs' father, from whom they had acquired their property, had been employed by the defendant. Id.

[17] The plaintiffs' usage of the subject property, which was referred to as that land within the "mow limits," was quite extensive. *Falvo* v. *Pejepscot Industrial Park, Inc.*, supra, 691 A.2d 1242. As noted by the court, "[t]hey have kept the area mowed, using it for recreation, storage, septic, and gardening purposes. They have continuously maintained gardens, a horseshoe pitching area and several lawn ornaments within the mow limits. In 1933 [the plaintiffs' grandfather] installed a septic tank and drain field within the mow limits. [The plaintiffs' father] replaced the septic system in 1967. The [family] also raised chickens and built two hen houses within the mow limits, replacing the hen houses with a storage shed in 1965." Id.

refused permission for such use. The [trial] court also found that [the plaintiffs' family] used the land exactly as every one else was using it." (Internal quotation marks omitted.) Id. The Supreme Judicial Court noted with approval the trial court's conclusion that under those circumstances, the "plaintiffs would have had to have done something unusual to supply the requisite notice . . . ." (Internal quotation marks omitted.) Id.

In this case, directly following the language with which the plaintiffs take issue, the court in its decision found that "there was perfectly credible evidence that the pattern of the [plaintiffs'] use was duplicated by that of many other association members, in tending to the section of the disputed area directly touching their fee simple holding, through mowing, plantings and the like." It further found the plaintiffs' use impliedly permissive. Under the circumstances, the court concluded that "[t]here is clearly insufficient evidence to establish the character of the plaintiffs' conduct to be opposed to the rights of the others and the association, and it is inadequate as well to have apprised them of resistance to those rights."

Reading the court's decision as a whole, we conclude that the court did not apply an improper, elevated standard of proof to the plaintiffs' adverse possession claim, but rather properly evaluated that claim within the context of the surrounding facts and circumstances and considering the parties' relationships. We construe the court's remarks as taking into account the nature of the disputed area as property essentially shared by the neighbors, albeit indirectly through their membership in the association, which possessed the fee, and via their deeded easement rights. The court was correct to consider that to establish the requisite notice of their hostile claim to the disputed area, the plaintiffs needed to do something more than what was customary throughout the neighborhood and regarded as permis-

sive use. Its comments merely describe, as an aside, the undesirable community dynamic that could result if one owner's usage of adjacent common areas, although not substantially different in character and extent from that of his neighbors and fellow association members, were held to be sufficient to make out a claim of adverse possession. On the basis of the foregoing analysis, the plaintiffs' third claim of error fails.

IV

The plaintiffs claim next that the court improperly found that they had failed to prove their claim of adverse possession as to both the association and the individual defendants. According to the plaintiffs, they proved all of the requisite elements for an adverse possession claim. They argue further that there was no evidence that the association ever took action to regain possession of the disputed area or that the individual defendants interfered with the plaintiffs' use of it. We are not persuaded.

To reiterate, the court found that the plaintiffs had not established any of the required elements of an adverse possession claim, specifically holding that the plaintiffs' " 'possession' cannot be deemed 'adverse' enough, 'exclusive' enough, 'uninterrupted' enough, 'hostile' enough, or 'notorious' enough to oust any of the neighbors from their mutually shared deeded entitlement." Regarding the requisite notice of an adverse possession claim, which is embodied by those elements, the court found that there was "clearly insufficient evidence to establish the character of the plaintiffs' conduct to be opposed to the rights of the others and the association, and [that the evidence was] inadequate as well to have apprised them of resistance to those rights."

In regard to the individual defendants' rights to use the disputed area, the court found that the split rail fence "permitted access to the [area] by other members

of the association." In so finding, the court apparently credited the testimony of some of the individual defendants that they had accessed the area over the years without trouble. The court rejected the plaintiffs' contention that their access was "quite limited," concluding instead that "the incomplete fence may be seen to bespeak an acknowledgement of the [individual defendants'] rights as much as an open, adverse effort to extinguish them."

We first note the applicable standard of review. Because adverse possession is a question of fact for the trier; *Lord* v. *Mansfield,* 50 Conn. App. 21, 31, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998); the court's findings as to this claim "are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Allen* v. *Johnson,* supra, 79 Conn. App. 745–46. "[O]nly in rare instances is [an appellate] court justified in holding, as a matter of law, that [adverse possession] has been established. A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." 16 R. Powell, Real Property (1999) § 91.13.

"Where title is claimed by adverse possession, the burden of proof is on the claimant. . . . The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without

license or consent of the owner." (Citation omitted; internal quotation marks omitted.) *Roche* v. *Fairfield*, supra, 186 Conn. 498; see also *Robinson* v. *Myers*, 156 Conn. 510, 517, 244 A.2d 385 (1968) ("open, notorious, uninterrupted, continuous, undisputed, peaceable and adverse possession of land for the requisite period under a claim of right will give title" [internal quotation marks omitted]). "Such a possession is not to be made out by inference, but by clear and convincing proof." (Internal quotation marks omitted.) *Roche* v. *Fairfield*, supra, 498. "The doctrine of adverse possession is to be taken strictly." (Internal quotation marks omitted.) Id., 499.

A successful adverse possession claim against the fee owner of land also may operate indirectly to extinguish easements over the land held by third parties, like the individual defendants here. See *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 284, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005), distinguishing *Goodwin* v. *Bragaw*, 87 Conn. 31, 86 A. 668 (1913), and *Gemmell* v. *Lee*, supra, 59 Conn. App. 572. However, "[a]dverse possession of the . . . servient estate does not affect the servitudes burdening . . . the property unless the adverse possessor also does something to . . . terminate the servitudes." 2 Restatement (Third) Property, Servitudes § 7.7, comment (c) (2000). "Whether an adverse possessor of a servient estate acquires title free of the servitude burden depends on whether the property has been used in a way that is adverse to the persons entitled to enforce the servitude. Because possession of the servient estate is not ordinarily inconsistent with continued existence of the servitude, something more is required to violate the obligation imposed by the servitude." Id.; see also 16 R. Powell, Real Property (1999) § 91.12 ("continuance or extinguishment of easements held by a third person against the possessed

land depends on the consistency, or inconsistency, of the possession with such outstanding rights").

Proof of the various elements of an adverse possession claim is required to establish that the owner of the land at issue was on notice that a hostile claim was being asserted against his or her ownership rights, such that the owner had the opportunity to take action to protect those rights. "When real estate is the subject of an adverse possession which is open, visible and exclusive, the acts of the party in possession may be such as will warrant the presumption and finding that the true owner had knowledge of the adverse claim." *Quigg* v. *Zeugin*, 82 Conn. 437, 440, 74 A. 753 (1909); see also *Boccanfuso* v. *Conner*, supra, 89 Conn. App. 288 n.23 ("[i]n adverse-possession doctrine, the exclusivity requirement . . . serves to give notice to the owner" [internal quotation marks omitted]); *Robinson* v. *Myers*, supra, 156 Conn. 518 ("requirement that an adverse possession be 'notorious' . . . is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice" [citation omitted]); 2 C.J.S. 455–56, Adverse Possession § 29 (2003) (adverse possession elements "designed to flag to the true owner the necessity of taking timely legal action to eject the possessor"). On the evidence presented, we are unable to conclude that the court's finding that the plaintiffs' claimed acts of possession were insufficient to afford the requisite notice was clearly erroneous.

To begin, as recounted in part III, the court relied on evidence showing that the plaintiffs' conduct in tending to portions of the passway adjacent to their property did not differ substantially from what was customary throughout the subdivision and, therefore, was inadequate to apprise the defendants of an adverse possession claim. The court's finding is supported by testimony in the record, and it is not for this court to

reassess the credibility of the witnesses. See *Allen* v. *Johnson,* supra, 79 Conn. App. 746. In addition, it is probable that the court considered the deer fence around the northern and eastern perimeters of the disputed area to be unpersuasive evidence of adverse possession, insofar as it was present for only nine years of the requisite fifteen year period. The evidence was undisputed in this regard.

As to the split rail fence at the southern end of the disputed area, in addition to its incomplete nature, the court may well have been influenced by the circumstance that it, as well as several of the other alleged indications of adverse possession such as the pachysandra bed, railroad ties, drainage ditch and encroaching portion of lawn, indisputably predated the plaintiffs' ownership of their property. The plaintiffs did not attempt to establish that their predecessors' activities on the disputed area were hostile, nor did they argue that the predecessors' usage should be tacked to their own usage to show adverse possession for the necessary period. Presumably then, the predecessors' usage of the disputed area was permissive.

Where use initially permissive is alleged subsequently to have become hostile, it must be shown that the permission was "clearly repudiated by the occupant . . . by some clear, positive, and unequivocal act . . . ." (Citations omitted; internal quotation marks omitted.) *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.,* 69 Conn. App. 839, 845–46, 797 A.2d 18, cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). Otherwise, such use will continue to be presumed permissive.[18] Id.

---

[18] Relatedly, "[i]f a fence exists before the adverse claimant takes possession of the land and the claimant fails to demonstrate the purpose for which it was erected, then it is a 'casual fence,' rather than a fence that 'designedly encloses' an area. If the character of the use of the enclosed land by an adverse claimant is not such as to constitute, of itself, a visible appropriation of the land, that use cannot be aided by a fence that casually creates the enclosure, and to the construction of which neither the adverse claimant nor any person under whom the adverse claimant claims has contributed.

The plaintiffs here presented evidence that they continued to maintain the fence, pachysandra and lawn installed by their predecessors and that they also installed some additional plantings. The court, however, in finding that permission existed for the plaintiffs' acts, necessarily was unconvinced that those acts amounted to the type of clear, positive and unequivocal acts of repudiation necessary to transform a permissive use into a hostile one.

The plaintiffs direct their argument to the fact that there was no evidence introduced at trial showing that the association at any time took action to stop the plaintiffs from using the disputed area. It is true that there was no evidence that during the alleged prescriptive period, the association communicated with the plaintiffs regarding their use of the disputed area, or that any representative of the association entered the area in an official capacity. Instead, the testimony established that only the individual defendants were present on the disputed area during the relevant time. We agree with the court, however, that this circumstance is of little import.[19]

Specifically, because the plaintiffs' use of the disputed area was not sufficiently adverse to oust the association from possession, there simply was no need for the association to take action to reassert its ownership. "[P]ossession [which is] *actual, visible and notorious, exclusive, continuous and hostile* . . . would

---

In other words, an adverse claimant can derive no aid in establishing the claim from an enclosure casually created by third persons in effecting a purpose of their own . . . ." 3 Am. Jur. 2d 120, Adverse Possession § 40 (2002). "Repairing or maintaining a casual fence . . . generally does not change a casual fence into a designed enclosure, but the claimant may so change the character of [a] casual fence that it becomes a designed enclosure." Id., 120–21.

[19] The court responded to that argument by stating that because "the purported adverse possession is inadequate, this issue would seem to be irrelevant, there being so little for the association to refute."

give the plaintiff[s] title by adverse possession unless the running of the statute was shown by other facts to have been effectively interrupted." (Emphasis added; internal quotation marks omitted.) *Woycik* v. *Woycik*, 13 Conn. App. 518, 525, 537 A.2d 541 (1988). "*Where an adverse claimant has shown proper adverse possession during the statutory period*, the burden of showing that the period was interrupted is on the party who seeks to benefit thereby." (Emphasis added.) 3 Am. Jur. 2d 331, Adverse Possession § 298 (2002). The court found that the plaintiffs had not proven any of the elements of adverse possession. Thus, the running of the statute of limitations never commenced, and there was no consequent need for the association to show that it took action to interrupt the plaintiffs' possession.

The plaintiffs' argument that it was not shown that the individual defendants interfered with the plaintiffs' use of the disputed area similarly is misplaced. "Mere nonuser of an easement created by deed, however long continued, does not create an abandonment. There must also be some conduct [by the party asserting adverse possession] adverse to and inconsistent with the existence of the easement and continuing for the statutory period . . . ." *Schroeder* v. *Taylor*, supra, 104 Conn. 604. Accordingly, it was not the individual defendants' burden, as easement holders, to show that they interfered with the plaintiffs' use of the disputed area. Rather, it was the *plaintiffs'* burden to show in the first instance that they adversely possessed the disputed area and, additionally, that their possession also amounted to "something more"; 2 Restatement (Third) Property, supra, § 7.7, comment (c); i.e., that it was inconsistent with the continued exercise of easement rights by the individual defendants. Insofar as the plaintiffs failed to prove adverse possession relative to the association, it necessarily follows that they fell short of showing that their possession further was of the

character necessary to extinguish the individual defendants' easement rights. Moreover, the court's findings that the split rail fence "permitted access to the [disputed area] by other members of the association" and that its incomplete nature could be viewed as an acknowledgment of their easement rights amount to a conclusion that those rights were unimpeded by the plaintiffs. Because the court's findings are amply supported by the testimony of various individual defendants regarding their activities on the disputed area, they will not be disturbed on appeal.

We conclude that the court's finding that the plaintiffs failed to prove adverse possession of the disputed area as to the association has evidentiary support and, hence, was not clearly erroneous. Furthermore, the court's consequent conclusion that the individual defendants' easement rights had not been extinguished is legally and logically correct and also finds support in the evidence.

V

The plaintiffs' final claim is that the court improperly found that their failure to enclose fully the disputed area defeated their claim of adverse possession. We disagree.

Again, the question of whether the elements of an adverse possession claim have been established by clear and convincing evidence is a factual one subject to the clearly erroneous standard of review. *Allen* v. *Johnson*, supra, 79 Conn. App. 746; see also *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 712–13, 829 A.2d 8 (2003) (court's factual findings as to prior existence of fence and implication thereof for easement claim not reversible unless clearly erroneous).

The plaintiffs in making their argument take issue with the court's finding in its March 1, 2004 memorandum of decision that "the incomplete fence may be seen to bespeak an acknowledgement of the association

members' rights as much as an open, adverse effort to extinguish them." The plaintiffs characterize the court's statement as indicative of a holding that complete enclosure of land is required to establish adverse possession and as demonstrative of the court's failure to take into account other evidence that supported the plaintiffs' claim. We do not read the court's decision so narrowly.

It is true that full enclosure of land is not required to prove that such land was possessed adversely. See 16 R. Powell, Real Property (1999) § 91.09 [3]. Neither is it the case that the existence of fencing, however, whether partial or complete, is dispositive of the issue. See, e.g., *Russell* v. *Davis*, 38 Conn. 562, 565 (1871) ("[m]any cases may be supposed where the fact that a party incloses land by an ordinary fence would afford no evidence that he thereby takes possession of the land inclosed, much less sufficient evidence of the fact"); *Kramer* v. *Petisi*, 53 Conn. App. 62, 68–70, 728 A.2d 1097 (date fence erected immaterial where evidence established its presence was permissive), cert. denied, 249 Conn. 919, 733 A.2d 229 (1999). Rather, each case must be decided on its own facts and circumstances, and the significance of any particular fencing must be evaluated within that context. Despite the plaintiffs' assertion to the contrary, there is no indication that the court did not consider all of the evidence in arriving at its decision or that it viewed the incomplete fence, standing alone, as dispositive of the matter. As we explained more fully in part IV, our review of the record convinces us that the court's finding that adverse possession had not been proven is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.