JOHN ARBORIO, INCORPORATED, *vs.* SILVIO SCAPIN
ET ALS.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued May 12th—decided July 10th, 1936.

*Richardson Bronson,* for the appellant (plaintiff).

*Thomas J. Wall,* with whom, on the brief, were *Thomas F. Wall* and *Robert A. Wall,* for the appellees (defendants).

AVERY, J. The plaintiff, a general contractor, was engaged in building two bridges in Peekskill, New York, and in connection therewith was required to excavate certain rock. The defendant was a partnership consisting of Silvio Scapin and four others, doing business under the name of S. Z. Z. C. D. Contracting Company. On April 22d, 1931, the plaintiff entered into a subcontract with the defendants whereby they were to do a portion of the work consisting of certain concrete work and stone masonry. The defendant Fireman's Fund Indemnity Company furnished a bond to the plaintiff for the faithful performance of the work by the defendants. The subcontractors started the work and after several weeks, about the middle of June, abandoned it. Thereupon the plantiff gave no-

tice to the bonding company of the abandonment, and completed the work covered by the subcontract. The present suit is to recover from the defendants and the bonding company the cost to the plaintiff of completing the work above the price specified in the subcontract.

The trial court reached the conclusion that there had been a material breach by the plaintiff of its contract with the defendants in that it had failed to furnish stone masonry of a size reasonably ready for the work as provided in its contract with them, that the breach justified the defendants in abandoning the work, and rendered judgment for the defendants. From this judgment the plaintiff has appealed, claiming as errors the refusal of the court to find certain facts as requested, the finding of certain facts without evidence, the conclusion of the trial court that there had been a material breach by the plaintiff which justified the defendants in abandoning the work, and a ruling upon evidence.

The controversy on this appeal relates to that portion of the subcontract which pertains to the stone masonry, with regard to which the contract stated that the Scapin firm should build and erect "290 cubic yards of stone masonry furnished by John Arborio, Inc., but not cut including handling of cement for $9.50 per cubic yard." The plaintiff was to do all excavating and filling, and the subcontract required that the subcontractors furnish to the plantiff a bond in the amount of $10,000 for the completion of the work. The contract contained a provision, expressed in the form of an agreement by the contracting company, to settle by arbitration any controversy that should occur on the job.

The finding is that early in April, representatives of the defendants came to the plaintiff's office in

Poughkeepsie and discussed the matter. Subsequently, all of the defendants came to Peekskill and submitted a written proposal or bid for the proposed work. This bid set forth that the subcontractor was to furnish "all labor, tools, lumber, necessary for building bridge concrete form." Prior to entering into the subcontract, the plaintiff, which was then engaged in finishing a bridge similar to the proposed bridges upon which the subcontractors were to work, called their attention to the sample bridge and several other bridges in the vicinity which had similar types of masonry and stated that the masonry appearing in the sample bridge was the way the stone was to be set up and to appear in the completion of the subcontract. On the day of the execution of the contract, and before its execution, the defendants notified the plaintiff that they had no equipment or tools, except hand tools, and the plaintiff informed them that no tools were necessary but a mixer and crane, and agreed to furnish the mixer. The defendants agreed to supply a crane. The plaintiff also stated to the defendants that the stone mentioned in the subcontract as stone masonry not cut which was to be furnished by it to the defendants would not be larger in size delivered on the job than stone which one or two men could handle, and that the defendants would only be required to trim the stone with a hammer or chisel to fit into the bridges.

After the defendants had entered into the work, the plaintiff caused to be moved onto the job stone, known as blasting stone, which had been blasted out of the excavation. This was delivered in such large, shapeless blocks that in order to be used on the bridge work it was necessary to have them split into numbers of pieces requiring the use of compressors and other machinery, including drills, to work them down to the shapes and sizes required. The defendants protested

against using the stone because it was too large and required expensive machinery to split it, whereupon the plaintiff informed them that they would be required to split and reduce the stone into shape, or it would sue them on the bond. The defendants then employed attorneys, who requested the plaintiff to arbitrate the question of the size of the stone furnished, which the plaintiff refused to do, and thereupon the defendant subcontractors abandoned the work and brought suit against the plaintiff in New York State for breach of contract.

The vital issue in the case is whether the stone furnished by the plaintiff for the construction of the item of two hundred and ninety cubic yards of stone masonry was of the character contemplated in the contract, or whether the plaintiff had materially breached the contract by failing to furnish stone as agreed. It is not controverted that the defendant subcontractors refused to go on with the work after June 18th and unless they were justified in so doing by the action of the plaintiff the judgment in their favor cannot stand.

In its appeal, the plantiff has sought certain additions to the finding. While entitled to some of the additions requested, a careful examination of the evidence discloses that no change in the finding can be made whereby the position of the plaintiff will be materially advantaged. The basis of the trial court's decision was that the term "stone masonry furnished but not cut" as employed by the parties in the subcontract meant stone masonry of sizes reasonably ready for the work contemplated, and was not met by furnishing large and shapeless bowlders blasted from the excavation which could only be used when split and shaped to sizes suitable for the bridge work; and that the plaintiff, by refusing to supply suitable stone, had breached the contract in a material particular. The

testimony as to this is conflicting, but from an examination of the record, we are unable to say that the subordinate facts found by the court upon which it based its decision are not supported by evidence. There having been found a material breach of the contract by the plaintiff which amounted to a distinct, unequivocal and absolute refusal to perform in failing to furnish stone for the masonry according to the terms of the contract, the subcontractors were excused from further performance and were justified in rescinding. *Rockwell* v. *New Departure Mfg. Co.,* 102 Conn. 255, 291, 128 Atl. 302.

In the course of the trial, defendants produced as a witness Charles A. Patterson whose qualifications to testify as an expert in such matters were not questioned. This witness was asked by defendants' counsel what was meant by "stone masonry, not cut." The plaintiff objected to this testimony on the ground that the contract spoke for itself and could not be varied by parol evidence. The court admitted the question and an exception was noted, whereupon the witness answered: "Stone blocks somewhere in a size needed. It can range anywhere from six inches square and a foot deep to four feet long and two feet high and a foot deep." In *New England Granite Works* v. *Bailey,* 69 Vt. 257, 37 Atl. 1043, suit was brought to recover for the value of a monument erected under the terms of a written contract which provided that it should be made of "white Westerly" granite, and the court said (p. 259): "It was incumbent upon the plaintiff to establish that the monument was made of *white* Westerly granite. The granite of which it was made was not white, but of reddish or chocolate color, and did not literally meet the terms of the contract. He (the plaintiff) was properly permitted to show that it was a variety known to the trade as 'white Westerly'.

498

It was then permissible for the defendant to show that the phrase 'white Westerly granite' was also applied by the trade to the variety of granite from which she claimed the monument was to be built." The testimony of the witness Patterson, a contractor familiar with the business in that locality, was offered to and received by the court for the purpose of showing the meaning of the term "stone masonry furnished but not cut" as employed in the contract, and was admissible for that purpose. Where words used in a contract have a technical meaning, parol evidence by an expert in such matters is admissible to show what that meaning is. *Soper* v. *Tyler,* 77 Conn. 104, 106, 58 Atl. 699; *Hatch* v. *Douglas,* 48 Conn. 116, 128; *Harlow* v. *Parsons Lumber & Hardware Co.,* 81 Conn. 572, 575, 71 Atl. 734. It was properly considered by the trial court "not for the purpose of ascertaining any unexpressed intent, but in order to determine the intent they meant to express by the phrase they used." *Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 289, 158 Atl. 548; *Gray* v. *Greenblatt,* 113 Conn. 535, 539, 155 Atl. 707.

There is no error.

In this opinion the other judges concurred.