LARRY WILLIAMS ET AL. *v.* CAMPANARO
CONSTRUCTION COMPANY, INC.
(7933)

DALY, NORCOTT and FOTI, Js.

Argued December 11, 1989—decision released February 27, 1990

*Brian J. Casey,* for the appellant (defendant).

*Kevin J. Pohl,* for the appellees (plaintiffs).

NORCOTT, J. The defendant appeals from the trial court's judgment rendered in favor of the plaintiffs in the amount of $6809.60 for compensatory damages resulting from the rupture of a sewer pipe in Milford.

The following facts are not in dispute. In November, 1985, the defendant, Campanaro Construction Company, entered into a construction contract with the state to build a flood control channel at the Great Creek Silver Sands State Park in the city of Milford. In connection with this project, the defendant entered into a subcontractor agreement with Northeast Dredging, Inc., under which Northeast was to furnish all labor and equipment necessary to construct the new Great Creek Channel. On or about August 19, 1986, a sewer pipe ruptured in the area of the Great Creek Silver Sands Park where Northeast was working.

The named plaintiff, Larry Williams, is a commercial shellfisherman who leases shellfish beds in the Connecticut waters off the coast of Milford.[1] As a result of the pipe rupture, sewage was discharged into the surrounding waters causing the closure, from August 19 to September 3, 1986, of shellfish beds leased by the plaintiffs.

The case was referred to an attorney trial referee who, after a hearing, issued a report recommending that judgment be rendered in favor of the plaintiffs on the negligence count[2] of the complaint in the amount

---

[1] The other plaintiff in this action is Jesse D., Inc., a Connecticut corporation that operates a shellfish harvesting business in the waters off Milford and that is wholly owned by and employs the plaintiff.

[2] The plaintiffs' complaint sought recovery based on theories of negligence, nuisance, trespass and violation of General Statutes § 22a-427, which prohibits pollution or discharge of wastes in any of the waters in the state.

of $6809.60, which was the amount of damages to which Williams had testified. The trial court accepted the referee's recommendation and rendered judgment accordingly.

On appeal, the defendant claims that the trial court erred in accepting the referee's conclusion that the evidence introduced at trial established a cause of action in negligence against the defendant. Specifically, the defendant argues that the evidence failed to establish (1) that the sewer pipe was ruptured due to the negligent conduct of the defendant, and (2) that Northeast was an agent of the defendant company. We find error.

A review of the record reveals that, in her report, the referee made absolutely no reference to agency, negligence or negligent conduct. The defendant filed a motion to correct the memorandum of decision requesting that the referee address these deficiencies. The referee, in denying the defendant's motion, articulated that "evidence adduced at trial" led her to conclude that Northeast "was an agent and under contract with the defendant and that the sewer line rupture was caused while Northeast Dredging Company, Inc., was in performance of its contract with the defendant."

The function of this court is to determine whether the trial court's findings are clearly erroneous. Practice Book § 4061; *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 256–57, 524 A.2d 610 (1987); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). On appeal, we must determine whether the legal conclusions of the trial court are " 'legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . .' " *Bowman* v. *1477*

The referee's memorandum of decision made no mention of the nuisance and trespass counts. Accordingly, we must conclude that the referee found no basis in the evidence to support those allegations.

*Central Avenue Apartments, Inc.,* supra, 256. " 'In reviewing the evidence . . . we must give it the most favorable construction in support of the verdict of which it is reasonably capable.' " *Shelnitz* v. *Greenberg,* 200 Conn. 58, 67, 509 A.2d 1023 (1986).

Our review of the record reveals that there was insufficient evidence to support a finding of liability for negligence against the defendant. "Recovery of damages in negligence requires proof by a fair preponderance of the evidence that the actor owed a *duty* of care to the victim, which was breached by the actor's failure to meet the *standard of care* arising therefrom and that the breach was the proximate cause of actual harm suffered by the victim." (Emphasis added.) *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 372, 441 A.2d 620 (1982). "[T]he trier may not decide an issue which is wholly unsupported by the evidence." *New Haven Savings Bank* v. *West Haven Sound Development,* 190 Conn. 60, 71–72, 459 A.2d 999 (1983).

At best, the evidence before the trial referee established (1) that Northeast and the defendant had entered into a general contractor-subcontractor relationship that related to dredging work in the waters off of the Great Silver Sands State Park area, (2) that a sewer pipe ruptured in the area where Northeast was working, and (3) that the state of Connecticut closed the shellfish beds leased by the plaintiffs, causing them to lose certain revenues during the period of closure. It is clear from the record, however, that the plaintiffs presented insufficient evidence to establish that Northeast or Campanaro was responsible for the rupture. The referee heard absolutely no evidence from which she could conclude that the sewer pipe ruptured due to a deviation from an applicable standard of care by either Northeast or the defendant.[3] Indeed, there is no evi-

---

[3] This case is distinguishable from *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* 20 Conn. App. 420, 567 A.2d 1250 (1989) (where it was error

dence regarding the nature of Northeast's dredging operations. Furthermore, the record reveals no evidence as to the circumstances under which the sewer pipe ruptured.[4]

While the trial referee recognized during the hearing that "proximate causation . . . is the issue here" and while she requested posthearing briefs on "whatever duty you feel that you, the general contractor, owed the plaintiff[s]," she ignored these issues in her final decision. In the final analysis, there was no evidence upon which the court could have logically concluded as to how the pipe broke, who broke it or under what circumstances it broke. "There is no question but that a plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation." *Cruz* v. *Drezek*, 175 Conn. 230, 236, 397 A.2d 1335 (1978). Because we find that the trial referee's conclusions rest not on sufficient evidence but on speculation, the plaintiffs cannot prevail.[5]

There is error, the judgment is set aside and the case is remanded[6] to the trial court with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.

---

for the trial court, sua sponte, to substitute its own factual findings for those of the factfinders). In this case, we take the facts as found by the trial referee, and we conclude that those facts are insufficient to support a conclusion of negligence.

[4] The essence of this insufficiency was captured during the following portion of the plaintiffs' cross-examination of Robert Campanaro, vice president of operations of the defendant company:

"Q: Did Northeast Dredging break the pipe?

"A: I don't know, sir."

In addition, we are not persuaded by the plaintiffs' argument that Robert Campanaro's statement at the hearing, that "Northeast was responsible for the break," was a concession of negligence. We conclude from our review of the record that the statement was not based on anything other than speculation.

[5] In light of our decision on this issue, we need not reach the defendant's claim that there was insufficient evidence from which the referee could have concluded that an agency relationship existed between the defendant and Northeast.

[6] See *Dills* v. *Enfield*, 210 Conn. 705, 713, 557 A.2d 517 (1989).