ROBERT F. CARROLL *v.* MICHAEL PERUGINI
(AC 23752)

Bishop, McLachlan and Hennessy, Js.

Argued December 10, 2003—officially released June 8, 2004

*Constantine G. Antipas*, for the appellant (plaintiff).

*Sebastian S. Ciarcia*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, Robert F. Carroll, appeals from the judgment of the trial court rendered in favor of the defendant, Michael Perugini, in this breach of contract action. On appeal, the plaintiff claims that the court improperly concluded that he (1) was in breach of the contract and (2) failed to show by a preponderance of the evidence that the defendant's construction work breached the implied warranty that the work would be completed in a good and workmanlike manner or that it was negligently performed. We dis-

agree and, accordingly, affirm the judgment of the trial court.

In its memorandum of decision, the court found the following facts. The parties entered into a written contract on November 14, 1988, modified by a written change order on the same date, for the construction of a home in Branford. The plaintiff planned to demolish his existing beach cottage and replace it with a home that could be lived in year round. The contract provided for a start date of November 23, 1998, and a completion date of April 15, 1999. The parties' written contract called for work consisting of the demolition of the existing private residence on the property and the construction of a private home thereon in accordance with plans and specifications prepared by John Cruet, Jr., an architect licensed in Connecticut. The subject property on which the construction was to take place was located in a beach association area in which major construction was prohibited between July 1 and Labor Day. The addendum to the contract provided that the defendant would pay the plaintiff $10,000 if the work was not fully completed by June 1, 1999. The contract provided that "[the defendant would] not [be] responsible for any delay beyond [his] control." It was agreed further by the parties that the plaintiff would pay for the materials for the construction of the house and would receive a credit against the contract price of $134,000 for such material purchases. The plaintiff agreed to and paid a total of $12,041.14 for change orders.

The court heard testimony from Benedetto Lorenzo, a licensed master plumber hired by the defendant. He testified that the architect had designated the placement of the hot water heater and heating, ventilating and air conditioning (HVAC) units below the flood plain line and that he had installed them in accordance with the plans. He further testified that the project was ready

for inspection for a certificate of occupancy in late June or early July, 1999, but that the certificate was denied because the placement of the hot water heater and HVAC units was unacceptable to the building inspector. As a result, major revisions were necessary before the certificate of occupancy could be issued. The court found that although at the time of the inspection the units were operational in accordance with the architectural drawings and in substantial compliance with the contract, the project could not be deemed completed because corrective work was required as a result of the placement of the units.

The court found that the plaintiff refused to pay the defendant for corrective work caused by the architect's errors. The court further found that the defendant did not breach the contract, but rather was delayed in his completion of the project because of the architect's designation of the units below the flood plain. In addition, the court found that the plaintiff breached the contract by failing and refusing to pay the defendant for work necessary to revise and complete the project as a result of the architect's errors.

On appeal, our review of the plaintiff's claims is limited to a determination of whether the court's conclusions are clearly erroneous in light of the evidence and pleadings contained in the record. See *Wilson* v. *Kapetan, Inc.*, 25 Conn. App. 529, 532, 595 A.2d 369 (1991). "The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witness." (Internal quotation marks omitted.) Id., 533. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lipshie* v. *George M. Taylor & Son, Inc.*, 265 Conn. 173, 182, 828 A.2d 110 (2003).

I

The plaintiff first claims that the court improperly concluded that he was in breach of the construction contract because he refused to pay for or to allow the defendant to complete corrective work caused by the architect's errors. The plaintiff argues that the evidence produced at trial showed that (1) he promptly responded each time the defendant made a demand for payment, and, thus, the defendant was paid in full for all services he actually performed; (2) despite many attempts to procure his presence to complete his unfinished work and to perform corrective work, the defendant failed to return to the job site after August 26, 1999; (3) the plaintiff's only recourse was to hire substitute workers to complete the work left undone by the defendant; and (4) therefore, it was the defendant who was in breach of the contract because he left the job site without completing the work required by the contract. Thus, the plaintiff further contends that the court's findings to the contrary were clearly erroneous. We disagree.

The following additional facts are necessary for our resolution of the plaintiff's claim. The plaintiff testified that his wife, Marie Carroll, handled all of the financial transactions involved in the renovation of the cottage. Marie Carroll testified that each and every time the defendant made a demand for payment, she complied. In support of that testimony, she provided extensive documentation regarding the purchase of materials and payments for services, including receipts, credit card statements and canceled checks totaling $86,000. She further testified that the defendant and his family were

guests at their home on July 3, 1999, yet they did not see him again until August 26, 1999. Both Marie Carroll and the plaintiff testified that on August 26, 1999, the defendant approached the Carrolls with change orders dated August 25, 1999, did not request any form of payment and never returned to the site after that date.

Lorenzo testified that the certificate of occupancy was denied by the Branford building inspector sometime prior to July 3, 1999. He further testified that a meeting was held by the building inspector a few weeks after July 3, 1999, to discuss the reasons for the denial of the certificate of occupancy. The building inspector, Lorenzo, the defendant, the architect and the plaintiff were present at the meeting. Lorenzo indicated that at some point during the meeting, "it basically stemmed down to that there [were] extras involved for [the defendant], [himself because] plumbing and heating . . . needed to be corrected, and in order to correct it, it was going to be an additional cost as to where nobody wanted to pick [it] up . . . [m]eaning the Carrolls didn't want to pick up the additional costs . . . ."

Clearly, the plaintiff and the defendant disagree as to who breached the contract. It is well settled, however, that even a mere statement indicating unwillingness to perform a contractual duty owed to another may constitute a total breach of contract. See *Martin* v. *Kavenewsky*, 157 Conn. 514, 518–19, 255 A.2d 619 (1969). On the basis of our review of the record, we conclude that there was evidence presented to support the court's conclusion that the plaintiff was in breach due to his refusal to pay the defendant to complete the job and to perform corrective work. As such, the court's finding that the plaintiff was in breach of the contract was not clearly erroneous.

## II

The plaintiff's second claim is that the court improperly concluded that he failed to establish, by a prepon-

derance of the evidence, the second count of his complaint, namely, that the defendant's construction work breached the implied warranty that the work would be completed in a good and workmanlike manner or that the work was performed negligently. The plaintiff argues that the court failed to weigh competing testimony and adopted a fictive chronology of events that resulted in an erroneous finding of fact.[1] We disagree.

Our review of the record reveals that there was insufficient evidence to support a finding that the defendant breached the implied warranty that the work would be completed in a good and workmanlike manner or that the work was performed negligently. From the evidence presented in the record, it was unclear whether the plaintiff's dissatisfaction with the workmanship was the result of the defendant's alleged negligence or the plaintiff's own breach of the contract. "There is no question but that a plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation." (Internal quotation marks omitted.) *Williams* v. *Campanaro Construction Co.*, 20 Conn. App. 709, 713, 570 A.2d 228 (1990). The court heard conflicting testimony and, on the basis of that testimony, found that the plaintiff did not meet his burden of proof. We conclude that this factual determination was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[1] In his motion for articulation, the plaintiff directed the court's attention to its use of incorrect dates in the original decision. The court incorrectly referenced the year 1998 instead of 1999 three times in the decision. In its order granting the motion, the court, however, stated that "the June or July dates referenced in the decision and paragraph one of the motion are corrected from 1998 to 1999. Also, the pipes froze during the winter after the work was performed in 1999." From that statement, we cannot conclude that the court adopted an incorrect chronology of events.