RONALD BORRELLI ET AL. *v.* H AND H
CONTRACTING, INC., ET AL.
(AC 25905)

Flynn, C. J., and Gruendel and Peters, Js.

Argued September 21, 2006—officially released April 17, 2007

*J. Michael Sulzbach*, for the appellants (plaintiffs).

*Gregory J. Kycia*, with whom, on the brief, was *Sean E. Donlan*, for the appellee (named defendant).

*Opinion*

PETERS, J. In this case about the installation of a septic system, the parties dispute whether the installer, in breach of contract or negligently, failed to construct the system in accordance with the plans of the designated architect. Resolving a number of factual disputes against the plaintiff landowners, the trial court rendered judgment holding them liable for unpaid bills for services rendered by the defendant installer. The plaintiffs' principal claim is that the judgment should be set aside because the trial court failed to assign dispositive significance to the defendants' pleadings. Because we are not persuaded that a fair reading of the record sustains this claim, we affirm the judgment of the trial court.

On July 9, 2001, the plaintiffs, Ronald Borrelli and Stephanie Borrelli, brought an action against the defendant H & H Contracting, Inc.,[1] alleging that in June, 1999, the parties had entered into a construction contract. This contract included a number of projects associated with the construction of a house, including a commitment by the defendant to install a septic system according to plans prepared by their architect, Bascom Magnotta, Inc. (Bascom Magnotta).[2] The defendant admitted this allegation but denied that it had failed to do so. In a counterclaim, the defendant alleged that the plaintiffs had failed to pay $4820 at the stipulated hourly rate for services rendered in accordance with their contract. After a court trial, the court found for the defendant, both on the complaint and the counterclaim, and rendered judgment for the defendant in the amount of $3520. The plaintiffs have appealed.

The plaintiffs have raised two issues on appeal. They maintain that, as a matter of law, the trial court improperly failed to conclude that the defendant was obligated to install the plaintiffs' septic system in accordance with the plans prepared by Bascom Magnotta. They further maintain that, as a matter of fact, the court improperly failed to find that the septic system was not operating properly. We are not persuaded.

[1] Robert Madore, Sr., also was named as a defendant in the plaintiffs' complaint. The court found that "[o]ther than his signature on the permit for the septic system, there was no evidence presented that [Madore] participated in any way in the work performed on the plaintiffs' property or that he had any contractual obligation whatsoever to the plaintiffs." The plaintiffs do not challenge the court's finding with regard to Madore, and that finding is not before us on appeal. We therefore refer to H & H Contracting, Inc., as the sole defendant in this appeal.

[2] Paragraph 3 of the complaint alleges that "[i]n June of 1999, plaintiffs and defendants entered into a contract whereby defendants would perform site work at [Brooks Road, Middletown, Connecticut] including . . . d. install septic system according to plans prepared by Bascom Magnotta, Inc. . . ."

## I

The plaintiffs' principal disagreement with the court's judgment in favor of the defendant stems from their dissatisfaction with the statement in the court's memorandum of decision that the sanitarian of Middletown approved the installation of the plaintiffs' septic system. The plaintiffs construe this statement as a legal ruling by the court that the sanitarian's approval was dispositive of the defendant's compliance with its contract obligation. The court's ruling was improper, according to the plaintiffs, because it disregarded the pleadings filed by the parties. We disagree with this construction of the record.

In the plaintiffs' complaint, they alleged that the defendant was obligated to install the septic system in accordance with a blueprint prepared by Bascom Magnotta. In the defendant's counterclaim, on which the court based its judgment, the defendant alleged nonpayment of bills presented to the plaintiffs that purported to represent work performed in compliance with the specifications in the blueprint. The plaintiffs rely on this pleading by the defendant as a judicial admission on its part that the court improperly failed to enforce.

Standing alone, the plaintiffs' argument may be plausible, although it would be surprising to have an experienced trial court judge ignore the pleadings presented to her. We note that the plaintiffs did not avail themselves of the opportunity to file a motion for articulation to clarify this conundrum. See Practice Book § 66-5. Our examination of the record, however, leads to a different explanation for the court's statement.

The plaintiffs are correct that the defendant agreed to comply with the Bascom Magnotta blueprint in installing the septic system for the plaintiffs. The plaintiffs are also correct that the defendant was not entitled

to recover on its counterclaim without establishing that it had complied with these specifications. The defendant never argued to the contrary. Its contention was, instead, that it was entitled to be paid because it had followed the specifications of the Bascom Magnotta blueprint. As we read the record, the trial court found that the defendant was entitled to be reimbursed for the unpaid portion of its bills because the defendant had sustained its burden of proof on this issue.

The standard of review that governs a trial court's findings of fact is well established. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006).

The factual issue that the trial court resolved in favor of the defendant relates to the defendant's compliance with the blueprint specification that stated: "This work shall not be done within 2 days of a rainstorm, or if there is standing water in the fill area." In their complaint, the plaintiffs had alleged that persistent wet grounds on their property in the vicinity of the septic system were attributable to the defendant's failure to prepare the grounds in accordance with this specification at the time when it installed the system.[3]

---

[3] In a related allegation of negligence, the plaintiffs claimed that the defendant negligently permitted "the leaching fields [to be left] open for long periods of time and during periods of precipitation and/or . . . had failed to install gravel and sand properly resulting in compromise of the leaching fields and septic system."

Accordingly, the plaintiffs' expert, Frank Magnotta, opined at trial that the septic system had drainage problems because it had been installed when the ground was too wet. Magnotta acknowledged that the defendant had used the proper materials for the fill. Even with proper materials, however, the placement of septic fill when the ground is too wet, he testified, results in sealing the fill off so that water and effluent can be trapped, and the septic area can become flooded. In his view, the defendant had failed to comply with the specification related to when the work was to have been done because the defendant's work schedule showed that the defendant had started on February 22, 2000, but did not place any sand until March, 4 2000, a week and one half later. During that period, Magnotta testified, a substantial amount of rain fell. According to Magnotta, the defendant should have waited for a different time of year,[4] particularly because that area "ha[d] marginal soil to begin with . . . ."

Magnotta was not at the work site when the defendant completed the installation of the septic system in March, 2000. In the absence of direct observations of the defendant's performance, Magnotta based his criticism of the defendant's installation on subsequent test borings, on his appraisal of a schedule of the dates on which the defendant had worked on the installation and on inferences he drew from rainfall data.

Without challenging Magnotta's expert opinion about how a septic system should be installed, the defendant disputed Magnotta's factual representations about what had transpired at the work site. It offered testimony that the work site had been prepared properly and that the fill had been installed properly. It challenged the

[4] Indeed, it was his view that there was no time within February or March, 2000, when the septic system could have been scarified and installed properly.

accuracy of Magnotta's weather data. Finally, the defendant relied on the fact that the Middletown sanitarian had conducted repeated timely on-site inspections when the condition of the ground was visible to the naked eye and had approved the work.

Magnotta discounted the significance of the sanitarian's inspection. Whatever the sanitarian's view, Magnotta was persuaded that "something was done very wrong and . . . there were just too many difficulties associated with this time of year and this type of soil to eliminate the problems that basically have occurred there with getting that material worked properly." Asked whether he found the sanitarian incompetent, he answered, "Generally, yeah."

On this state of the record, it was appropriate for the trial court to consider the probative value that it should assign to the sanitarian's inspection. As the fact finder, the court had the authority to decide, contrary to Magnotta's view, that the sanitarian's contemporaneous approval of the septic system work site at the time that it was visible to the naked eye was evidence that the defendant had in fact complied with the applicable contract specifications.

There is no suggestion anywhere in the record that the Bascom Magnotta blueprint was unusual in requiring the installer of the septic system in this case to take possibly adverse weather conditions into account. Viewed from this perspective, the statement in the trial court's opinion that the plaintiffs' challenge properly may be construed as an evidentiary finding rather than as a description of the pleadings. The court stated that "the city of Middletown required that its sanitarian approve the installation of any septic system before the city would issue a certificate of occupancy on a residence. The sanitarian of the city of Middletown did

approve the septic system installed by [the defendant]. The city also issued a certificate of occupancy."

That these statements reasonably may be read as evidentiary observations relevant to whether the defendant has met its burden of proof is borne out by the undisputedly evidentiary nature of the court's immediate next sentence, in which it found that "[t]he plaintiffs offered no evidence that the system is not operating properly." Although the plaintiffs dispute this characterization of the record, their dispute does not turn a factual finding into a conclusion of law. As it had the authority to do, the court made a finding that the sanitarian's approval was evidence of proper installation of the septic system and found that the plaintiffs offered no persuasive evidence to the contrary. In the absence of a contrary articulation by the court, we construe the record in favor of affirmance rather than reversal. *State* v. *Medina*, 228 Conn. 281, 292 n.10, 636 A.2d 351 (1994).

## II

The plaintiffs' alternate claim is that the trial court improperly failed to find that the septic system was not operating properly. As the plaintiffs recognize, to prevail on this claim, they must establish that the court's findings were clearly erroneous. *Carroll* v. *Perugini*, 83 Conn. App. 336, 339–40, 848 A.2d 1262 (2004). We are not persuaded.

In its memorandum of decision, the trial court stated: "The plaintiffs offered no evidence that the system is not operating properly. The only evidence offered was that the system had 'failed' because samples taken on the property in an area near the septic system contained the presence of coliform bacteria. However, Ronald Borrelli admitted that he has sued one of his neighbors, claiming that runoff from the neighbor's property was the cause of the presence of coliform bacteria on the property." The court concluded that "[b]ased on the

foregoing, the court cannot find that [the defendant] failed to install the septic system properly, and judgment may enter in favor of the defendants on paragraph 4f of the complaint."

In their challenge to the court's finding as to the presence of coliform bacteria, the plaintiffs point once again to the testimony of Magnotta, their expert witness. In his view, "the site was set up and graded in such a way that all this surface water was either being diverted around the septic area, and any of the subsurface water would have been intercepted with the curtain drain that was present to protect the septic system from any uphill water."

The trial court found, however, that the premise for the expert's opinion had not been established. It found that the curtain drain, which had been constructed by the plaintiff Ronald Borrelli, did not function properly. "[The] functional failure of the curtain drain exacerbated the drainage problems on the property. However, there was no evidence that the conduct of [the defendant] caused or increased such problems." The plaintiffs' appeal does not challenge the validity of this finding.[5]

We conclude, therefore, that the trial court's judgment in favor of the defendant must be sustained. As the finder of fact, the court had the authority to resolve two disputed issues in favor of the defendant. It found that the defendant established that the septic system that it had installed for the plaintiffs conformed to the specifications to which the parties had agreed, so that the defendant was entitled to recover on its counterclaim for unpaid bills. It further found that the plaintiffs

---

[5] We are not persuaded by the plaintiffs' contention, in their reply brief, that it was improper for the defendant to rely on this finding without having filed a statement of issues pursuant to Practice Book § 63-4 (a) (1). The connection between the trial court's various findings was plain on the face of the record.

failed to establish that difficulties that they had experienced on their property were attributable to defects in the defendant's construction of the septic system. We are persuaded that neither finding was clearly erroneous.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

FLYNN, C. J., dissenting. I respectfully dissent from the majority opinion. This breach of contract case raises two key questions: (1) whether the plaintiffs were entitled to have the defendant construct the designed septic system for which they bargained and (2) whether the trial court properly found that there was no evidence that the septic system was not working properly.

I

Although the majority states that it is not persuaded by the plaintiffs' principal claim that the court improperly failed to assign dispositive significance to the pleadings, I am persuaded that the record supports the plaintiffs' claim and warrants reversal of the judgment and a new trial. Paragraph 3 (d) of the plaintiffs' complaint alleged that the defendant had agreed, via a contract, to "install [a] septic system according to plans prepared by Bascom Magnotta, Inc." (Bascom Magnotta), on the plaintiffs' property. In its answer to the plaintiffs' complaint, the defendant specifically admitted this allegation. Furthermore, the defendant made an admission in its counterclaim when it pleaded in paragraph 1 that "[t]he [contracted] work included . . . (d) [i]nstalling the septic system pursuant to the blueprint prepared by [Bascom Magnotta] . . . ."

The defendant's admission in the answer to the complaint and in its own counterclaim constituted binding judicial admissions that relieved the plaintiffs of any

obligation to offer proof concerning this issue.[1] See *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006). Clearly, without contest, there was a contract between the plaintiffs and the defendant that required the defendant to install a septic system for the plaintiffs in accordance with the plans prepared by Bascom Magnotta. One of the key questions before the court, then, was whether the defendant lived up to that agreement.

Despite the importance of this question, both to the plaintiffs' claim for breach of contract and to the defendant's counterclaim for breach of contract, the court never made a finding that the septic system conformed to the plan provided by Bascom Magnotta. Rather, one of the troubling findings of the court was that "[t]he June, 1999 contract between the parties provide[d] that [the defendant] will 'put sand as required by print.' That is the only reference to the [Bascom] Magnotta septic plan. No other language in that contract requires that [the defendant] grade to the elevations shown on the plan." Clearly, this finding does not take into account the pleadings of the parties and the judicial admissions of the defendant. The defendant had admitted that it was required to adhere to the Bascom Magnotta septic plan both in its answer and in its counterclaim; this fact was not in dispute. Accordingly, in order to comply with the contract of the parties, the defendant was

---

[1] "[T]he admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 866, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005); see also 71 C.J.S. 246, [Pleading] § 196 [2000] (admission in a plea or answer is binding on the party making it, and may be viewed as a conclusive or judicial admission). It is axiomatic that the parties are bound by their pleadings." (Internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 769, 890 A.2d 645 (2006).

required to "grade to the elevations shown on the plan" if, in fact, elevations were shown on the plan.[2] In accordance with its judicial admission, it was required to adhere to all of the specifications of the Bascom Magnotta septic plan in order to fulfill its duties under the contract. I readily admit that there was some dispute over the exact contractual responsibilities of the defendant. The June, 1999 "contract" to which the court referred was a handwritten proposal that was not signed by either party, and both parties agreed that it did not set forth accurately their precise agreement.[3] There also existed an earlier typewritten proposal, again not signed by either party, which specifically stated that the septic work was to be performed in accordance with the Bascom Magnotta plan. Regardless of which document, if any, evinced the actual contract of the parties, however, both parties pleaded that their agreement required that the septic system be installed in accordance with the Bascom Magnotta plan. Additionally, George Hill, the owner of the defendant company, testified on direct examination that Ronald Borrelli submitted the Bascom Magnotta print to him and that he followed it.[4]

The defendant on appeal argues that the trial court acted well within its discretion in "finding that the

---

[2] The plan included the requirement that grading be in accordance with the specific contours set forth on the plan. The plaintiffs' expert, Frank Magnotta, a civil engineer licensed by the state, testified that the grading performed by the defendants did not comply with the plan. Exhibit twenty-three, a certified grading as-built map, also demonstrates that grading was not in compliance with the plan. Magnotta also testified that the septic system "installation [did] not meet the requirements of the plan or the health code as far as operation and performance of that septic system."

[3] The court also acknowledged this in its memorandum of decision.

[4] We also note that the Middletown health department application for the permit to construct the septic system, which was in evidence, stated that the engineering plan of Magnotta was to be utilized. Robert Madore, Sr., a licensed septic installer, was listed as the installer on the permit application, and it was signed by Madore. Two additional signatures appear on the permit application also; one is not legible and the other bears the signature of George Hill. Hill also testified that he went to the town hall to obtain this permit and that he was listed as Madore's apprentice for that job.

defendant was not obligated to install the septic system according to the [Bascom Magnotta] plans."[5] The majority, although acknowledging that the defendant, in fact, was required to comply with the specifications on the Bascom Magnotta plan, concludes that the record demonstrates that the trial court found that the defendant had established its compliance. Having thoroughly reviewed the court's memorandum of decision, I am unable to agree with the majority's conclusion; nowhere did the court indicate that the defendant had complied with the Bascom Magnotta plan. Instead, the court appears to have found that plan to be rather insignificant, focusing on the fact that the sanitarian had approved the septic system. This fact, however, is not germane to the issue of whether the defendant installed the septic system in compliance with the plans developed by Bascom Magnotta, as agreed by the parties to be a necessary part of their contract. The contract did not simply call for an approved septic system; rather, it specifically called for a septic system that complied with the design plan prepared by Bascom Magnotta.

Our precedent is clear: Parties are entitled to get that for which they bargain.[6] This maxim is demonstrated

---

[5] The defendant argues that not all judicial admissions are binding and that the court may exercise its discretion in disregarding the judicial admissions of a party where contrary evidence is presented. His argument, however, is unpersuasive.

[6] That is not to say that there must be absolute compliance with each and every minute term of a contract. Although at one time common law did require strict compliance with all terms of a contract, "[t]he general rule with respect to compliance with contract terms [now] . . . is not one of strict compliance, but substantial compliance." 15 S. Williston, Contracts (4th Ed. Lord 2000) § 44.52, pp. 217–18. "The doctrine of substantial performance shields contracting parties from the harsh effects of being held to the letter of their agreements. Pursuant to the doctrine of substantial performance, a technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial." Id., 221–22.

nicely in *Strouth* v. *Pools By Murphy & Sons, Inc.*, 79 Conn. App. 55, 829 A.2d 102 (2003). In *Strouth*, the plaintiffs had sought to recover damages from the defendant swimming pool company for breach of contract because the pool company had begun to install a peanut shaped inground pool instead of the kidney shaped pool required in the parties contract. Id., 60–61. In that case, we agreed with the trial court's conclusion that constructing a pool in a shape different from that which is contracted is a substantial breach of the contract. Id., 61. As we explained: "The issue . . . [was] whether the construction of a kidney shaped pool, when the contract called for a peanut shaped pool, constituted a material breach of the parties' contract so as to justify the plaintiffs in not performing their remaining duties under the contract. See *Bernstein* v. *Nemeyer*, 213 Conn. 665, 672–73, 570 A.2d 164 (1990) ('[i]t follows from an uncured material failure of performance that the other party to the contract is discharged from any further duty to render performances yet to be exchanged'); *John Arborio, Inc.* v. *Scapin*, 121 Conn. 492, 497, 186 A. 488 (1936); 2 Restatement (Second), Contracts § 237 (1981)." *Strouth* v. *Pools By Murphy & Sons, Inc.*, supra, 59. The question was not whether the pool would operate properly or pass inspection, but whether it comported with the contract specifications. Similarly, in the present case, the issue of whether the defendant installed the septic system in compliance with the contract, which specified that it was to be installed in accordance with Bascom Magnotta plan, was crucial to a determination of whether the contract was breached.[7] Separate from the issue of whether the septic system worked properly, a crucial factor in this

---

[7] This determination was crucial both to the plaintiffs' claim and to the defendant's counterclaim. Even if the court had determined that the plaintiffs had not proven that the defendant failed to adhere to the plan, the defendant, to be successful on its counterclaim, had to prove that it had complied with the plan.

breach of contract case centered on whether the septic system was installed in adherence to the Bascom Magnotta plan, a contractual requirement, relevant both to the complaint and to the counterclaim. Without a finding on this crucial issue, the judgment of the trial court cannot be affirmed. On this basis alone, I would reverse the judgment and remand the case for a new trial.

## II

Additionally, however, I am troubled by the court's finding that "[t]he plaintiffs offered no evidence that the system is not operating properly." Although the court's fact-finding is given deference under the clearly erroneous standard, I cannot defer to a finding that there was "no evidence" when, in fact, there was evidence that the septic system was not working properly. The record before us contains many references to the "bleed off" of the septic waters and the expert opinion of Frank Magnotta, a civil engineer licensed by the state, that due to faulty installation, the septic system violated the state health code. Certainly, a septic system that violates the state health code cannot be said to be working properly. Although the trial court, if it noted Magnotta's evidence, might have found the testimony not credible, its finding that there was "no evidence," as opposed to no credible evidence, is not supported by the record. I would not affirm a judgment that was based on such a crucial factual finding that is contrary to the record. On this basis also, I would reverse the judgment and remand the case for a new trial.

Accordingly, I respectfully dissent.