JOSEPH MASTROIANNI *v.* FAIRFIELD COUNTY
PAVING, LLC, ET AL.
(AC 26732)

McLachlan, Gruendel and Dupont, Js.

Argued November 14, 2007—officially released March 11, 2008

*Louis Ciccarello*, for the appellant (plaintiff).

*Stephen J. Conover*, for the appellees (defendants).

McLACHLAN, J. In this action for use and occupancy payments and for damages for, inter alia, breach of a commercial lease, the matter was referred to an attorney trial referee (referee) who filed a report, on the basis of which the trial court subsequently rendered judgment in favor of the defendants, Fairfield County Paving, LLC, Domenic D'Attilo and Tony Dilorio. On appeal, the plaintiff, Joseph Mastroianni, claims that the court improperly accepted the referee's (1) findings that the plaintiff was not entitled to damages, (2) findings and conclusions that were based on unpleaded special defenses and (3) findings on unconscionability. We agree with the plaintiff's first and third claim and, accordingly, reverse the judgment of the trial court and remand the matter for further proceedings.[1]

The plaintiff owned an unimproved lot, located at 74 Bouton Street in Norwalk. On November 1, 2001, the plaintiff entered into a lease with D'Attilo and Dilorio, doing business as Fairfield County Paving & Construction, Inc.[2] The initial term of the lease was for one year, from November 1, 2001, to October 31, 2002, with a rental payment in the amount of $600 per month. The lease provided the tenant with an option to renew for five years, with incremental rent increases during that time. As part of the negotiations, the parties agreed that the defendants would "clear, properly grade, pave, and secure by fencing, the perimeter of the lot with a gate at the entrance" and "use the property in compliance with the zoning regulations."

On November 19, 2002, the defendants sent a letter by certified mail to the plaintiff to exercise the option

---

[1] Because the resolution of those issues is dispositive of the appeal, we do not reach the plaintiff's remaining claim.

[2] At the hearing before the referee, evidence was presented that Fairfield County Paving & Construction, Inc., was not in existence on November 1, 2001.

to renew the lease and tendered a rental check for November, 2002. On November 21, 2002, the plaintiff served a notice to quit on the defendants,[3] dated November 18, 2002, in which he stated as a reason the expiration of the lease term. The defendants' letter and rental payment reached the plaintiff on December 2, 2002. The plaintiff returned the rental payment to the defendants.[4] When the defendants refused to vacate the premises according to the notice to quit, the plaintiff commenced a summary process action in the Housing Session of the Superior Court. The parties entered into a stipulated agreement dated February 20, 2003, and a judgment for possession entered in favor of the plaintiff with a final stay of execution through March 31, 2003. The defendants vacated the premises in March, 2003. Thereafter, the plaintiff commenced the present action to collect use and occupancy payments for the months of November 1, 2002, through March, 2003, and to collect damages for the defendants' failure to clear, grade, pave and fence the lot as agreed upon in the lease.

The matter was referred to the referee. The referee found that (1) D'Attilo and Dilorio were not parties to the lease because they had signed the lease on behalf of Fairfield County Paving, LLC, (2) the defendants had not violated the Norwalk zoning regulations, (3) the defendants had complied substantially with the terms of the lease, (4) the combined cash and in-kind payments and improvements exceeded the fair rental value of the property, (5) the eviction of the defendants was premature and unconscionable, and (6) the plaintiff was not entitled to recover any damages. The referee,

---

[3] The plaintiff testified that he served Fairfield County Paving, LLC, because he discovered that that entity was occupying the lot.

[4] According to the lease, the defendants had the option of renewing the lease for a five year period, but the option had to be "exercised within 90 days of the expiration of this Lease . . . ." Thus, this option had already expired on November 19, 2002, when the defendants mailed the letter and check to the plaintiff.

therefore, recommended that judgment be rendered in favor of the defendants. The plaintiff objected to the acceptance of the referee's report on May 16, 2005. On June 28, 2005, after a hearing, the court accepted the referee's report and rendered judgment in favor of the defendants.

The plaintiff then filed this appeal. On August 1, 2005, the plaintiff moved for an articulation, and on September 22, 2005, in response to the plaintiff's motion, the court signed a copy of the June 28, 2005 hearing transcript. The plaintiff then moved for a review of the court's response. On December 21, 2005, we granted the plaintiff's motion for review and ordered the court to articulate the factual and legal basis for accepting the referee's report. On June 6, 2006, the court, sua sponte, vacated its original judgment and ordered a new trial. The defendants then moved for review of that decision, and on July 26, 2006, we granted the defendants' motion, vacated the court's June 6, 2006 judgment and again ordered the court to articulate the factual and legal basis for accepting the referee's report. The court filed an articulation dated August 16, 2006, and the plaintiff sought review of that decision with this court. On November 19, 2006, we granted the plaintiff's motion for review and ordered the court to further articulate the factual and legal basis for its acceptance of the referee's report. The court filed a memorandum of decision on December 8, 2006.

The plaintiff's first claim is that the court improperly accepted the referee's findings that he was not entitled to damages. He specifically challenges the findings that (1) D'Attilo and Dilorio signed the lease on behalf of Fairfield County Paving, LLC, and thus were not parties to the lease, (2) Fairfield Country Paving, LLC, was not liable for any damages, (3) the defendants were not liable for failing to complete all site improvements within the one year term of the lease, and (4) the rents

and improvements made prior to the defendants' vacating the premises exceeded the fair rental value.

As a preliminary matter, we set forth the applicable standard of review. "Attorney fact finders are empowered to hear and decide issues of fact on contract actions pending in the Superior Court . . . . On appeal, [o]ur function . . . is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . Rather, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC,* 102 Conn. App. 231, 235–36, 926 A.2d 1 (2007).

"Finally, we note that, because the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." (Internal quotation marks omitted). *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.,* 263 Conn. 191, 202, 819 A.2d 227 (2003).

The referee found that the plaintiff was not entitled to damages because the termination of the lease

agreement, under the circumstances of this case, "[rose] to the level of being 'unconscionable' . . . ." The plaintiff claims that the court improperly accepted the referee's findings on unconscionability.

"[T]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Our review on appeal is not limited to determining whether there has been clear error. . . . [T]he ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and . . . the trial court's determination on that issue is subject to a plenary review on appeal. *It also means, however, that the factual findings of the trial court that underlie that determination are entitled to the same deference on appeal that other factual findings command.* Thus, those findings must stand unless they are clearly erroneous." (Emphasis in original; internal quotation marks omitted.) *New England Retail Properties, Inc.* v. *Maturo*, 102 Conn. App. 476, 487–88, 925 A.2d 1151, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). Because the plaintiff has challenged the factual findings that relate to the referee's finding of unconscionability, we employ the clearly erroneous standard of review. See *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 412, 867 A.2d 841 (2005).

In his report, the referee made the following findings of fact that are relevant to our analysis. "During his direct examination by the plaintiff, Mr. D'Attilo repeatedly stated that the plaintiff 'kicked me out' before the balance of any improvements could be made. . . . Considering the cumulative effect of the evidence and testimony concerning [the lease] and Mr. D'Attilo's testimony, which was introduced by the plaintiff, the plaintiff effectively 'opened the door' for the defendants to argue in their posttrial brief claims such as 'unconscionability' . . . . The effective result of the plaintiff

throwing the defendants out under these circumstances amounts to a forfeiture of the benefits provided and conferred by the defendants upon the subject property prior to the plaintiff issuing the notice to quit. Such a result rises to the level of being 'unconscionable' in this case, especially considering that the plaintiff is requesting a 'windfall' recovery based on the circumstances he is primarily responsible for, i.e., rescinding-repudiating the lease. The plaintiff ousted the defendants prematurely, notwithstanding the defendants' substantial compliance, thereby breaching the lease agreement. The plaintiff should not be rewarded for such conduct. All the plaintiff had to do was accept the option exercise made by the defendant limited liability company . . . which exercise was issued prior to the notice to quit. . . . The balance of any claimed improvements could then be performed and completed within a reasonable time over the balance of the lease term. Had the improvements not been performed, the plaintiff may then have had the right to seek to recover damages. However, it was the plaintiff, not the defendants, who caused the harm he now complains of and seeks compensation for."

The referee's findings of fact are clearly erroneous. Our examination of the record reveals that (1) the lease expired on October 31, 2002, and (2) the plaintiff served a notice to quit on November 21, 2002, which was after the termination of the lease term and after the defendants' option to renew the lease had expired.[5] Contrary to the referee's findings, the plaintiff did not oust the defendants prematurely, and, therefore, the plaintiff's eviction of the defendants was not unconscionable. See *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 763, 677 A.2d 479 (1996) ("The purpose of

---

[5] Although the defendants had the right to extend the lease, it was at a higher rental, and the defendants ultimately agreed to vacate the premises.

the doctrine of unconscionability is to prevent oppression and unfair surprise. J. Calamari & J. Perillo, Contracts [3d Ed.] § 9-40.").

We next address the issue of the defendants' liability. The referee found that D'Attilo and Dilorio signed the lease on behalf of their business, and, thus, they were not jointly and severally liable under the terms of the lease. On the lease, however, their individual signatures were not followed by any language indicating that they were signing in a representative capacity. Further, their signatures were followed by the oath: "On this     day of     , 2001, Domenic D'Attilo and Tony Dilorio, d/b/a Fairfield County Paving & Construction, Inc., came before me personally and under oath, stated that they are the persons described in the above document and they signed the above document in my presence." The signature of a notary public appeared below this oath.

We conclude that D'Attilo and Dilorio were parties to the lease and, thus, are jointly and severally liable. Both signed the lease above their names. The designation that D'Attilo and Dilorio were "doing business as" a corporation does not preclude personal liability. See *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 454 n.17, 892 A.2d 938 (2006). Additionally, it was undisputed that neither Fairfield County Paving & Construction, Inc., nor Fairfield County Paving, LLC, was in existence at the time the parties entered into the lease agreement.[6] "[O]ur legislature expressly has provided for personal liability for those who knowingly enter into contracts on behalf of corporations prior to their legal formation." *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 154, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007). General Statutes § 33-638 provides in

[6] Pursuant to General Statutes § 33-637, a corporation is legally formed when the certificate of incorporation is filed with the secretary of the state. Similarly, a limited liability company is formed when the articles of organization are filed with the secretary of the state. General Statutes § 34-120.

relevant part that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation . . . are jointly and severally liable for all liabilities while so acting." Therefore, the referee's finding that D'Attilo and Dilorio were not liable is not legally and logically correct, and the court improperly accepted that legal conclusion.

We also conclude that the referee's finding with respect to the liability of Fairfield County Paving, LLC, is not supported by the record. At some point after the signing of the lease, D'Attilo and Dilorio formed Fairfield County Paving, LLC, which occupied the plaintiff's premises until March, 2003. Furthermore, it is clear from the record that Fairfield County Paving, LLC, occupied the premises from November, 2002, to March, 2003, without submitting rental payments to the plaintiff or performing any improvements on the property. Thus, the referee's finding that Fairfield County Paving, LLC, was not liable to the plaintiff, although it clearly occupied the plaintiff's property, is clearly erroneous.

Having determined that D'Attilo, Dilorio and Fairfield Country Paving, LLC, were liable, we now address the remaining issues concerning the determination of damages. The referee made the following findings with respect to damages: (1) "[T]he combined cash and in-kind payments and improvements made by the defendants to and/or for the benefit of the plaintiff exceeded the fair rental value of the subject property during the period of the defendants' occupancy of the property from November, 2001, through March, 2003"; (internal quotation marks omitted); (2) the defendants had "substantially complied" with the terms of the lease, which were ambiguous, (3) the plaintiff's eviction of the defendants was premature and unconscionable, and, therefore, (4) "the plaintiff is not entitled to claim or recover any damage[s] in this case."

These findings are contrary to law and not supported by the record. First, the defendants agreed to make certain improvements as a bargained for consideration in exchange for the right to lease the property. See *Parker* v. *Slosberg*, 73 Conn. App. 254, 263 n.12, 808 A.2d 351 (2002) (doctrine of consideration does not require or imply equal exchange between contracting parties). The fact that the defendants might later have regretted the agreed on terms of the lease does not preclude the plaintiff from recovering damages as a result of the defendants' breach of the lease. "[C]ourts do not unmake bargains unwisely made." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 505–506, 746 A.2d 1277 (2000). Moreover, it was undisputed that for a five month period following the expiration of the lease on October 31, 2002, the defendants were occupying the premises without the payment of any rent or the performance of any further improvements. Although the referee and the court failed to address that issue, the plaintiff was entitled to recover the reasonable value of the defendants' use and occupancy of the premises from November, 2002, to March, 2003. See General Statutes § 47a-35a.

Second, the referee's findings that the defendants had "substantially complied with the terms of the lease" and that "[t]he terms of the lease were vague and ambiguous" are incompatible.[7] "The doctrine of substantial performance shields contracting parties from the harsh effects of being held to the letter of their agreements. Pursuant to the doctrine of substantial performance, a

---

[7] The referee's finding that the contract was ambiguous with respect to the specific improvements that the defendants were required to perform is supported by the record and is not clearly erroneous. The lease states: "The [defendants agree] to clear, properly grade, pave, and secure by fencing, the perimeter of the lot with a gate at the entrance." As noted by the referee, the language of this provision could be read as limiting the paving of the property to the perimeter of the lot.

technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial." (Internal quotation marks omitted.) *Borrelli* v. *H & H Contracting, Inc.*, 100 Conn. App. 680, 692 n.6, 919 A.2d 500, cert. granted on other grounds, 282 Conn. 925, 926 A.2d 665 (2007). In the present case, because the defendants' obligations under the lease were found to be ambiguous, it cannot be determined on this record whether the defendants' actual performance was in substantial compliance with the required performance. Moreover, offsetting the value of any required improvements made under the lease with the value of the use and occupancy of the premises during the five month period when the defendants occupied the premises but made no payments was contrary to law. The defendants did not plead the right of setoff against the plaintiff's demand. See Practice Book § 10-54.[8] "It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery." (Internal quotation marks omitted.) *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 200, 756 A.2d 309 (2000). Therefore, the finding that the combined cash and in-kind payments and improvements made by the defendants exceeded the fair rental value of the subject property during the period of the defendants' occupancy of the property from November, 2001, through March, 2003, was improper.

---

[8] Practice Book § 10-54 provides: "In any case in which the defendant has either in law or in equity or in both a counterclaim, or right of setoff, against the plaintiff's demand, the defendant may have the benefit of any such setoff or counterclaim by pleading the same as such in the answer, and demanding judgment accordingly; and the same shall be pleaded and replied to according to the rules governing complaints and answers."

We conclude, after a scrupulous examination of the record, that the court should not have accepted the report of the referee. Accordingly, a hearing is necessary to determine the intent of the parties as to the specific improvements to be performed during the term of the lease, from November 1, 2001, to October 31, 2002, the cost to complete any unfinished improvements and the value of the use and occupancy of the property for the five month period from November, 2002, to March, 2003.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment in the plaintiff's favor and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.